UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


WYDELL EVANS,

     Petitioner,

v.                                                                    CASE NO. 6:07-cv-897-Orl-28KRS

SECRETARY, DEPARTMENT
OF CORRECTIONS, *et al.*,

     Respondents.

_____

## ORDER

This case is before the Court on the Petition for Habeas Corpus Relief (Doc. No. 1)

filed by Wydell Evans. Pursuant to the instructions of the Court, Respondents filed a

Response to Petition for Writ of Habeas Corpus (Doc. No. 16). Thereafter, Petitioner filed

a Reply to the Response (Doc. No. 22). As explained below, the habeas petition must be

denied.

I.    *Statement of the Facts*

The facts adduced at trial, as set forth by the Supreme Court of Florida, are as

follows:

> On October 21, 1998, two days after being released from prison,
> Wydell Evans shot and killed his brother's seventeen-year-old girlfriend,
> Angel Johnson, during an argument over her alleged unfaithfulness to Evans'
> brother. At the time of the shooting, Evans was in an automobile with
> Johnson, Erica Foster, Sammy Hogan, and Lino Odenat. At some point

1

during the argument, Johnson laughed, to which Evans responded, "You think it's funny? You think it's funny?" Evans then pulled out a gun and shot Johnson in the chest.

After the shooting, Evans directed Hogan to drive to the home of a man called "Big Dick." As they drove, Evans passed the gun to Odenat and told him to dispose of it. When they arrived at Big Dick's house, Evans left the car and talked to Big Dick. While Evans was talking, Odenat decided to get out of the car and let the others take Johnson to the hospital. As Odenat opened the door and stepped out, Evans told him to get back into the car and Odenat obeyed. Within a few minutes, Evans returned and directed Hogan to drive into a nearby parking lot. There, Evans threatened Foster and Hogan not to tell who shot Johnson or he would kill them and their families. After threatening Foster and Hogan, Evans tried to wipe his fingerprints from inside the car and left with Odenat. Once Evans was out of the car, Foster and Hogan rushed Johnson to the hospital where she later died of her wounds.

At the hospital, Foster and Hogan were questioned by the police, at which time they first told police that a white man driving a cream-colored car shot Johnson over a drug deal. They later changed their story and reluctantly identified Evans as the shooter. The police found Evans at a motel the next morning. He was taken into custody, charged, and after a jury trial, convicted of one count of first-degree premeditated murder, one count of kidnaping, and one count of aggravated assault.

The trial judge followed the jury's recommendation of a sentence of death, finding two aggravating circumstances and several nonstatutory mitigating circumstances. The court imposed concurrent sentences of life imprisonment on the kidnaping count and 108.15 months with a three-year mandatory minimum term on the aggravated assault count.

*Evans v. State,* 838 So. 2d 1090, 1092-93 (Fla. 2002).

## II.   Procedural History

Petitioner was charged by indictment with one count of first degree premeditated murder, one count of kidnaping, and one count of aggravated assault, and one count of

possession of a firearm by a convicted felon. (Ex. A-3 at 451-52.)[1]  A jury trial was conducted, after which Petitioner was found guilty of counts one, two, and three.[2] (Ex. A-15 at 2143-44.) The jury also found that Petitioner was in possession of a firearm during the commission of each of the three offenses. *Id.*

A penalty proceeding was conducted, and the jury recommended by a vote of ten to two that the trial court impose the death penalty upon Petitioner. (Ex. A-17 at 2418.) Thereafter, the trial judge conducted a hearing pursuant to *Spencer v. State*, 615 So. 2d 688 (Fla. 1993), after which it found two aggravating factors and several non-statutory mitigators. (Ex. A-3 at 431-46; Ex. A-4 at 634-62.) The state trial court concluded that the aggravating circumstances outweighed the mitigating circumstances and as such, followed the jury's recommendation and sentenced Petitioner to death for the first degree murder conviction. (Ex. A-3 at 445-46.)  The trial court further sentenced Petitioner to life imprisonment for the kidnaping conviction as a prison releasee reoffender, and to 108.15 months in prison with a minimum mandatory sentence of three years for the aggravated assault conviction. (Ex. A-3 at 446; Ex A-4 at 661.) The sentences in counts two and three are to run consecutively to Petitioner's sentence for the first degree murder conviction. *Id.* at 662.

---

[1] References to the record will be made by citing to the particular volume and page of the advanced appendix. For example, "Ex. A at 1" refers to page one of the volume labeled Exhibit A.

[2] The possession of a firearm by a convicted felon count (count four) was severed from the trial.

On direct appeal, Petitioner raised six claims. (Ex. B.) The Supreme Court of Florida rejected those claims and affirmed Petitioner's conviction and sentence. *Evans*, 838 So. 2d 1090. Petitioner filed a petition for writ of certiorari with the United States Supreme Court, which was denied. (Ex. F-3.)

On February 24, 2004, Petitioner filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.851. (Ex. G.) The state court held an evidentiary hearing on Petitioner's motion. (Ex. H-1 - HH-2.) After the evidentiary hearing, the trial court denied the motion for post-conviction relief. (Ex. G-3.). Petitioner appealed, and while his appeal was pending, filed a petition for writ of habeas corpus with the Florida Supreme Court. (Ex. L) The Florida Supreme Court affirmed the state trial court's denial of the Rule 3.851 motion and denied the petition for writ of habeas corpus. *Evans v. State*, 946 So. 2d 1 (Fla. 2006).

## III.    *Governing Legal Principles*

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of

4

state-court rulings is highly deferential and that state-court decisions must be given the

benefit of the doubt).

### A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim

adjudicated on the merits in state court unless the adjudication of the claim:

>    (1)    resulted in a decision that was contrary to, or involved an
>           unreasonable application of, clearly established Federal law, as
>           determined by the Supreme Court of the United States; or
>
>    (2)    resulted in a decision that was based on an unreasonable
>           determination of the facts in light of the evidence presented in the
>           State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the

holdings of the United States Supreme Court "as of the time of the relevant state-court

decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Schwab v. Crosby*, 451 F.3d

1308, 1324 (11th Cir. 2006) (stating that the federal law relevant to this analysis is the United

States Supreme Court precedent "in existence at the time the conviction became final"),

*cert. denied*, 127 S. Ct. 1126 (2007).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions;

the 'contrary to' and 'unreasonable application' clauses articulate independent

considerations a federal court must consider." *Maharaj v. Sec'y for Dep't. of Corr.*, 432 F.3d

1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh

Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

>    Under the "contrary to" clause, a federal court may grant the writ if the state
>    court arrives at a conclusion opposite to that reached by [the United States

5

> Supreme Court] on a question of law or if the state court decides a case
> differently than [the United States Supreme Court] has on a set of materially
> indistinguishable facts.   Under the 'unreasonable application' clause, a
> federal habeas court may grant the writ if the state court identifies the correct
> governing legal principle from [the United States Supreme Court's] decisions
> but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas

relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the

state court's decision "was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."   A determination of a factual issue

made by a state court, however, shall be presumed correct, and the habeas petitioner shall

have the burden of rebutting the presumption of correctness by clear and convincing

evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984),

established a two-part test for determining whether a convicted person is entitled to relief

on the ground that his counsel rendered ineffective assistance: (1) whether counsel's

performance was deficient and "fell below an objective standard of reasonableness"; and

(2) whether the deficient performance prejudiced the defense.[3] *Id.* at 687-88.  A court must

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court
clarified that the prejudice prong of the test does not focus solely on mere outcome
determination; rather, to establish prejudice, a criminal defendant must show that
counsel's deficient representation rendered the result of the trial fundamentally unfair
or unreliable.

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Additionally, it is well established that a defendant has the right to effective counsel on appeal. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals has applied the United States Supreme Court's test for ineffective assistance at trial to guide its analysis of ineffective assistance of appellate counsel claims. *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991); *Matire v. Wainwright*, 811 F.2d 1430, 1435

7

(11th Cir. 1987). Thus, in order to establish ineffective assistance of appellate counsel, Petitioner must show (1) that counsel's performance was deficient and "fell below an objective standard of reasonableness" and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687-88.

### C.    Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)    (I)    there is an absence of available State corrective process; or
>
>         (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state

court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claims on the merits.

*Id.; see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the federal claim rests must be substantially the same for it to be the substantial equivalent of the properly exhausted claim.").

Procedural default will be excused only in two narrow circumstances. First, a

9

petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## IV. Analysis

### A. Claim One

Petitioner claims that trial counsel rendered ineffective assistance when he failed to investigate, prepare, and present the defense of diminished capacity during the guilt phase of trial (Doc. No. 1 at 6-7). In support of claim one, Petitioner maintains that had counsel

10

done a rudimentary investigation of his client's background and hired a mental health professional, he would have discovered a viable defense for the guilt phase (Doc. No. 14 at 6). Specifically, Petitioner argues that he has a documented history of a serious head injury that affected him throughout his childhood and adult life. *Id.* at 8-9. Petitioner contends that in light of the facts of the case, coupled with his head injury and his ingestion of alcohol, he was not able to form the requisite intent to commit premeditated first degree murder, and would have been convicted of a lesser included offense or would have been found not guilty of first degree murder. *Id.* at 9.

Petitioner raised this claim in his Rule 3.851 motion for post-conviction relief. The Florida Supreme Court, in affirming the state trial court's denial of this claim, stated that defense counsel was not ineffective for failing to investigate and present a defense of diminished capacity because such a defense is not viable in the State of Florida. *Evans v. State*, 946 So. 2d 1, 11 (Fla. 2006) (quoting *Chestnut v. State*, 538 So. 2d 820, 820 (Fla. 1989); *Hodges v. State*, 885 So. 2d 338, 352 n.8 (Fla. 2004); *Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003)). The Court further explained that while it had recognized or made exceptions for conditions that are commonly understood, such as medication, epilepsy, infancy, and senility, Petitioner had not alleged he was experiencing such a condition at the time the offenses were committed. *Id.* The Court stated that even if the diminished capacity defense was available, counsel would not be deemed ineffective for failing to introduce evidence of a meritless defense, as the diminished capacity defense would have been inconsistent with Petitioner's theory that the shooting was an accident. *Id.* (citations omitted).

11

Because this issue was adjudicated on the merits in the state courts, this Court may grant habeas corpus relief only if the state courts' decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1) and (2). The Court is cognizant that it may not substitute its judgment on this issue for judgments made by the state courts. Moreover, this Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. *Bell*, 535 U.S. at 694. Relief is only warranted if the state court's application was objectively unreasonable. *Id.*

Criminal defendants must be afforded the opportunity to present a complete defense. *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). A defendant has a right to present relevant evidence, but this right is not unlimited and is instead subject to "reasonable restrictions." *Taylor v. Illinois*, 484 U.S. 400 (1988). The failure to investigate a sole defense constitutes ineffective assistance of counsel. *Code v. Montgomery*, 799 F.2d 1481, 1483 (11th Cir. 1986).

At the outset, the Court finds no merit in the suggestion that trial counsel acted deficiently in failing to investigate, prepare, and present a defense of diminished capacity during the guilt phase of trial. Petitioner argues that the Florida Supreme Court misapplied Florida precedent as diminished capacity is a recognized defense. However, the Court agrees with the Florida Supreme Court that Florida law does not recognize a defense of diminished capacity. *Hodges v. State*, 885 So. 2d 338, 352 n. 8 (Fla. 2004)

12

(evidence of an abnormal mental condition not constituting insanity is inadmissible to negate specific intent); *Spencer v. State*, 842 So. 2d 52, 53 (Fla. 2003) (expert evidence of "diminished capacity" is inadmissible on the issue of mens rea); *Chestnut v. State*, 538 So. 2d 820, 823 (Fla. 1989). The Florida Supreme Court has made a distinction between attempting to present evidence of commonly understood mental conditions such as epilepsy and intoxication, versus attempting to introduce evidence of "esoteric" conditions like general mental impairment, which fall under the category of "diminished capacity." *Chestnut*, 538 So. 2d at 823. In any event, as noted, *supra*, this Court can only grant habeas corpus relief if a state court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, not state law.

Although a defense of voluntary intoxication was recognized in Florida at the time of Petitioner's offense,[4] Petitioner is not arguing that trial counsel failed to present a defense of voluntary intoxication. Instead Petitioner asserts that he had an impulse control disorder that, coupled with his alcohol use on the day the murder was committed, rendered him unable to form the requisite intent to be convicted of first degree premeditated murder.

Petitioner relies upon *State v. Bias*, 653 So. 2d 380 (Fla. 1995), to support his claim that trial counsel failed to investigate and present a defense of diminished capacity during the guilt phase of trial. In *Bias*, the Florida Supreme Court held that an expert could testify

---

[4] Florida law abolished the defense of voluntary intoxication, effective October 1, 1999. § 775.051, Fla. Stat. Petitioner's offense was committed on October 21, 1998.

13

regarding a mental disease or defect when attempting to prove a defense of voluntary intoxication. *Id.* at 382. The Court stated that testimony must be limited to "whether a given quantity of intoxicants, combined with the mental disease or defect diagnosed in the defendant, rendered the defendant intoxicated to the level that the defendant could not form the required specific intent at the time of the crime." *Id.* The Court further reasoned that it wanted "to ensure that the defense of voluntary intoxication is not utilized as a label for what in reality is a defense based upon the doctrine of diminished capacity." *Id.* at 383.

Unlike *Bias,* the feature of Petitioner's proposed testimony at the post-conviction evidentiary hearing was not that he was intoxicated but instead that he had a brain injury that led to a lack of impulse control, which, combined with drinking alcohol, led to his inability to form the requisite specific intent. (Ex. H-2 at T 253, 266-71; Ex. H-3 at T 112-16.) Defense trial counsel cannot be considered ineffective for failing to investigate and present testimony regarding a diminished capacity defense, as this defense was inadmissible at the guilt phase of trial.

Further, as the Florida Supreme Court noted, even if counsel were deficient in failing to investigate and raise a defense of diminished capacity, Petitioner cannot show that this deficiency prejudiced the outcome of the guilt phase of trial, as a diminished capacity defense was inconsistent with the theory of defense presented at trial. Petitioner testified at trial that on the day of the shooting, around 6:00 pm, he and his friend Lino were drinking whiskey at his house. (Ex. A -14, T 1820.) Petitioner thought he had about two shots of whiskey. *Id.* Petitioner continued drinking at Darryl Little's house for

14

approximately three to four hours. *Id.* at T 1823. Petitioner told the jury that although he had been drinking alcohol, he was focused. *Id.* at T 1824. Later in his testimony Petitioner stated that he was not drunk, just slightly intoxicated. *Id.* at T 1837. Petitioner stated that he had a clear recollection of what happened the night of the shooting. *Id.* at 1837-38. On cross-examination, Petitioner testified that he knew what was going on, was perfectly aware, and was functioning fine. *Id.* at T 1850.

At the evidentiary hearing held on Petitioner's Rule 3.851 motion for post-conviction relief defense counsel Kenneth Studstill testified that he did not have Petitioner evaluated by a mental health expert. (Ex. H-1 at T 58.) Petitioner did not appear to have a mental defect and he told counsel that the shooting was an accident. *Id.* at T 64. Studstill did not explore other possible defenses for the guilt phase of trial. *Id.* Studstill had been aware that Petitioner had been drinking on the day the crimes were committed, however, Petitioner told him that while he had consumed alcohol that day, he knew what he was doing. *Id.* at T 89.

On cross-examination, Studstill stated that he was confined by what Petitioner told him, and Petitioner stated that he was aware of his actions and was functioning fine. *Id.* at T 98. In fact, Petitioner gave a detailed explanation or version of the events to counsel and to the police in a videotaped statement. *Id.* at T 100. Studstill was familiar with diminished capacity but had no indication that Petitioner was out of touch or his capacity was diminished when the crimes were committed. *Id.* at T 106. The evidence was, in fact, contrary to Petitioner's argument: Petitioner emphasized, prior to trial, that he did know

15

what had happened the day the crimes were committed and testified that he was aware and in control. *Id.* at T 107-08.

Based on the evidence introduced at trial and during the post-conviction evidentiary hearing, it is objectively reasonable to conclude that a defense of diminished capacity would be inconsistent with Petitioner's theory of defense presented at trial. Petitioner argued that the shooting of victim Angel Johnson was accidental. According to Petitioner's version of the events, he observed a gun in the front seat of Sammy Hogan's vehicle. (Ex. A-14 at T 1836.) Petitioner did not want the gun near him so he tried to pass the gun back to the victim. *Id.* at T 1837-38. Petitioner testified, contrary to other eyewitnesses, that when Johnson pushed the gun with her hands, the gun accidentally fired, and the bullet hit Johnson. *Id.* at T 1838. Petitioner testified that he was completely aware of what he was doing when the offense was committed and testimony relating to his alleged diminished capacity would have conflicted with the defense presented. The Court finds that, in considering this claim, the Florida Supreme Court did not reach a determination that was contrary to, or involved an unreasonable application of, clearly established federal law. Accordingly, this claim is denied pursuant to § 2254(d).

### B.    *Claim Two*

Petitioner asserts that trial counsel was ineffective at the penalty phase of trial when counsel failed to adequately challenge the State's case. In particular Petitioner alleges that counsel failed to request a penalty phase attorney to assist in presenting mitigation evidence (Doc. No. 1 at 28). Petitioner further contends that counsel failed to investigate

16

his mental health background to prove mental mitigation that was available for presentation to the judge and jury. *Id.* at 29. Petitioner additionally argues that counsel failed to retain an expert witness to present evidence of brain damage he suffered to show that he was under the influence of an extreme mental disturbance at the time of the offense. *Id.* at 31. Petitioner states that counsel did not investigate and present evidence that he did not have the capacity to appreciate the criminality of his conduct nor could he conform his conduct to the requirements of the law. *Id.* at 33.

Petitioner raised this claim in his Rule 3.851 motion for post-conviction relief. The state court held an evidentiary hearing on this claim and then rejected the claim in a detailed order. First, the state court found Petitioner had not established that trial counsel acted deficiently in failing to request co-counsel for trial. (Ex. G-3 at 18.) The court noted that there was no requirement in Florida to appoint two attorneys in a capital case at the time Petitioner was tried. *Id.* The state court concluded that "[t]he mere fact that a Defendant has been represented by one attorney alone is insufficient to establish a claim of ineffective assistance of counsel." *Id.*

Next the state court addressed Petitioner's claim that counsel was ineffective for failing to conduct an adequate investigation into his mental health. *Id.* at 19. The court found that Petitioner's school records would have shown a long history of violence and behavioral problems that would not have assisted the defense. *Id.* The state court then reasoned that counsel elected instead to present evidence of Petitioner's good character and did not want the jury to hear additional evidence of Petitioner's violence. *Id.* at 22. The

court concluded counsel was not deficient in failing to investigate Petitioner's mental health. *Id.*

Furthermore, the state court found that State witness Harry McClaren's, Ph.D., testimony was more credible than the defense doctors' testimony and that Petitioner had failed to establish a sufficient link between his brain injury and his actions the night of the murder.[5] *Id.* The court determined that the defense experts' conclusions relating to how Petitioner's brain injury and damage affected his behavior were completely rebutted by the State's expert. *Id.* at 29. The court also found that Dr. McClaren's conclusions were supported by the facts of the case. *Id.* Finally, the court concluded that there was no reasonable probability that the presentation of the mental health evidence would have caused Petitioner to receive a life sentence, and thus Petitioner could not establish prejudice. *Id.* at 30.

In rejecting Petitioner's challenges to the foregoing findings by the state court, the Florida Supreme Court stated the following:

(a) Failure to Request Appointment of Co-Counsel

---

[5] Dr. McClaren was appointed by the court and is an expert in the area of forensic psychology. (Ex. H-3 at T 6-7.) Dr. McClaren reviewed Petitioner's school records, medical records, his records from the Department of Corrections, and interviewed Petitioner in order to make his assessment. *Id.* at T 9. While McClaren believed that Petitioner probably had a diffuse brain injury that could account for impulsive behavior, McClaren concluded that Petitioner was conscious of his actions and in control on the night the crimes were committed. *Id.* at 24, 67.

18

Evans next alleges that trial counsel was deficient for failing to request the appointment of co-counsel to assist in investigating and presenting mitigation in a capital case pursuant to Guideline 2.1 of the American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases (1989) (ABA Guidelines) [n 22].

> [n 22] Guideline 2.1 states that "[i]n cases where the death penalty is sought, two qualified trial attorneys should be assigned to represent the defendant."]

First, the trial court found that Evans failed to establish that defense counsel's performance was deficient. The trial court recognized that defense counsel was bound by Brevard County's guidelines for trying a capital case, not the ABA guidelines, [n 23] and that Florida Rule of Criminal Procedure 3.112, which adopted the ABA guidelines in part and provides that a judge may appoint co-counsel in a capital case, had not been enacted at the time of Evans' trial. Second, even if counsel was deficient, the trial court determined that Evans had not demonstrated how counsel's solo representation prejudiced Evans. As the trial court correctly stated, "[t]he mere fact that a Defendant has been represented by one attorney alone is insufficient to establish a claim of ineffective assistance of counsel." *See Cole v. State*, 841 So. 2d 409, 428 (Fla. 2003) ("The general allegation that mitigating evidence could have been better presented [had co-counsel been requested and appointed] is an insufficient allegation of prejudice."); *State v. Riechmann*, 777 So. 2d 342, 359 (Fla. 2000) (denying claim of ineffective assistance for failure to request co-counsel where defendant failed to specifically demonstrate how counsel's solo representation affected outcome of trial). The trial court's findings are supported by competent substantial evidence. We affirm.

> [n 23] Studstill testified that he had followed Brevard County's standards for handling capital cases, not the ABA's. He also testified that it is not his practice to request co-counsel, and he did not move to have penalty phase co-counsel appointed in Evans' trial.]

(b) Failure to Investigate Mental Health Mitigation

Evans next claims that trial counsel was ineffective for failing to adequately investigate his background for mental health mitigation to present at the penalty phase. Evans claims that defense counsel was deficient

for failing to discover a wealth of mitigating information, including Evans' brain injury and lifelong emotion and behavioral problems, and for failing to present anything other than positive character evidence at the penalty phase. Evans alleges that he was prejudiced by counsel's deficient investigation because discovery and presentation of his brain injury and impulse disorder would have led to an instruction on both mental health statutory mitigators.

We decline to address whether counsel's investigation was deficient because we affirm the trial court's conclusion that Evans has failed to demonstrate that he was prejudiced by counsel's failure to present the mitigation evidence presented at the evidentiary hearing. "[B]ecause the *Strickland* standard requires establishment of both [deficient performance and prejudice] prongs, when a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." *Whitfield v. State*, 923 So. 2d 375, 384 (Fla. 2005) (alteration in original) (quoting *Stewart v. State*, 801 So. 2d 59, 65 (Fla. 2001); *see also Sweet v. State*, 810 So. 2d 854, 863-64 (Fla. 2002) (declining to reach deficiency prong based on finding that there was no prejudice).

Evans has failed to establish prejudice because the mitigation evidence he presented at the evidentiary hearing would likely have been more harmful than helpful. "An ineffective assistance claim does not arise from the failure to present mitigation evidence where that evidence presents a double-edged sword." *Reed v. State*, 875 So. 2d 415, 437 (Fla. 2004). While the testimony presented at the evidentiary hearing established that Evans suffered from mental health problems, it also displayed a long history of behavioral problems and escalating violence throughout his school career. Presenting this evidence at the penalty phase would have resulted in the jury hearing about Evans' aggression towards students and teachers, his aggression towards police officers, his pride in being known as a "jack-boy" because he robs drug dealers, and his habit of carrying a gun. It is just as likely that this evidence would have been more "aggravating" than mitigation. *See Reed*, 875 So. 2d at 436-37 (denying ineffective assistance claim because "even if [defense] counsel had . . . investigated further, the testimony that could have been presented was just as likely to have resulted in aggravation against rather than mitigation for [the defendant]").

Moreover, this mitigation evidence presented at the evidentiary hearing is inconsistent with Evans' own testimony at the guilt phase. The evidence presented at the evidentiary hearing regarding Evans' uncontrollable rage disorder is inconsistent with his testimony that he had

a "clear recollection" of the shooting because he was focused and in control.

> Based on the foregoing, Evans has not established that there is a reasonable probability that his sentence would have been different had counsel discovered and presented the mitigation evidence Evans presented at the evidentiary hearing. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052 (establishing that the appropriate test for prejudice is whether defendant has demonstrated [sic] reasonable probability that outcome would have been different but for counsel's unprofessional errors and defining reasonable probability as "probability sufficient to undermine confidence in the outcome"). Therefore, we are confident in the outcome and affirm the trial court's denial of this claim.

*Evans,* 946 So. 2d at 11-13.

When "a state trial court rejects a claim on one prong of the ineffective assistance of counsel test and the state supreme court, without disapproving that holding, affirms on the other prong, both of those state court decisions are due AEDPA deference." *Hammond v. Hall,* 586 F.3d 1289, 1332 (11th Cir. 2009). The Eleventh Circuit has further stated "[u]nless both reasons for rejecting the claim are contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, the ineffective assistance of counsel claim is due to be rejected." *Id.* (quotations omitted).

As with claim one, because both parts of claim two were adjudicated on the merits in the state court, this Court may grant habeas corpus relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *See* 28 U.S.C. § 2254(d)(1) and (2). Moreover, this Court may not grant the writ simply because it determines that the state court erroneously or incorrectly applied the correct governing law. *Bell,* 535 U.S. at 694. Relief

is only warranted if the state court's application was objectively unreasonable. *Id.* The Court will address each portion of claim two separately below.

### 1. Failure to Request Appointment of Co-Counsel

Turning first to the issue of whether counsel rendered ineffective assistance of counsel in failing to request a penalty phase attorney, the Court finds no merit in Petitioner's arguments. At the evidentiary hearing held on Petitioner's Rule 3.851 motion for post-conviction relief, defense counsel admitted he never moved for appointment of penalty phase co-counsel and was not aware the American Bar Association states that two qualified attorneys are to represent a defendant charged with a capital crime. (Ex. H-1 at T 68-71.) However, pursuant to Rule 3.112 of the Florida Rules of Criminal Procedure "[a] court must appoint lead counsel and, upon written application and a showing of need by lead counsel, should appoint cocounsel [sic] to handle every capital trial in which the defendant is not represented by retained counsel." Fla. R. Crim. P. 3.112(e).

The Florida Rules of Criminal Procedure do not require co-counsel in every case, and, in any event, Rule 3.112 became effective on July 1, 2000, after Petitioner was already tried and convicted. Moreover, Studstill testified that he had tried twelve or thirteen death penalty cases prior to representing Petitioner. (Ex. H-1 at T 66-67.) Counsel was experienced, and Petitioner's mere statement that appointment of co-counsel during the penalty phase was necessary, without more, does not entitle him to relief. Petitioner has not demonstrated that the Florida Supreme Court's determination was contrary to, or involved an unreasonable application of, clearly established federal law. This portion of

claim two is denied pursuant to § 2254(d).

## 2. Failure to Investigate Mental Health and Retain Expert Witnesses

Next the Court will address Petitioner's contentions that trial counsel rendered ineffective assistance of counsel by failing to investigate his mental health and failing to retain expert witnesses for the penalty phase of trial. Petitioner asserts that he was under the influence of an extreme mental or emotional disturbance and his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, at the time of the offense, was substantially impaired.

A criminal defendant may introduce evidence of mitigating circumstances at the penalty phase of a capital murder trial. Section 921.141(6), Florida Statutes, lists the statutory mitigators proper for presentation during the penalty phase. Included in this list are: (b) the capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance; and (f) the capacity of the defendant to appreciate the criminality of his or her conduct or to conform his or her conduct to the requirements of law was substantially impaired. § 921.141 (b) & (f), Fla. Stat. (1998). Subsections (b) and (f) define the mitigating circumstances that Petitioner now argues should have been presented to the jury.

During Petitioner's penalty phase, counsel did not present evidence to prove any statutory mental health mitigator and only presented evidence relating to Petitioner's character and background. (Ex. A-16.) Defense trial counsel presented testimony from several of Petitioner's family members, who informed the jury that Petitioner was a good

23

person, had been raised by his grandmother due to his mother's crack cocaine addiction, was a loving father who supported his children, and was generous to many people with his time and money. *Id.* The State presented evidence of two aggravating circumstances, that Petitioner was previously convicted of a felony and was on felony probation and that Petitioner previously was convicted of another capital felony or a felony involving the use or threat of violence to the person. § 921.141(5) (a) & (b), Fla. Stat. (1998).

The trial court, in its sentencing order, found the existence of the two aggravating circumstances. (Ex. A-4 at 647-48.) The court did not find the existence of any statutory mitigating factors. *Id.* at 651-53. The court gave little weight to the following non-statutory mitigators: an abused childhood, Petitioner's contribution to community or society, Petitioner's counseling of youth to avoid crime, and Petitioner's behavior while in prison or jail. *Id.* at 655-59. The court also gave some weight to Petitioner's charitable or humanitarian deeds and found the nonstatutory mitigating circumstance of remorse did not exist. *Id.* at 657-61.

At the state post-conviction evidentiary hearing, Studstill admitted he did not have Petitioner evaluated by a mental health expert. (Ex. H-1 at T 58.) Counsel explained that after meeting and representing Petitioner, it did not appear he had a mental deficiency or a quick temper. *Id.* at T 62. Counsel also noted that he did not request statutory mitigation jury instructions nor did he obtain mental health experts to explore mental health issues or testify regarding the statutory mitigators, as he did not believe that he had any grounds for asking for such instructions. *Id.* at T 72-77, 91. Studstill told the Court that he was not

24

aware Petitioner suffered a closed-head injury when he was three years old. *Id.* at T 75. Studstill did not obtain Petitioner's medical records or school records prior to trial, but testified that, had he been advised Petitioner had sustained a closed-head injury at a young age, he would have investigated the situation. *Id.* at T 78. Counsel told the state court that he was advised by Petitioner's family members that he did reasonably well in school until he quit in the tenth grade. *Id.* at T 86.

On cross-examination Studstill stated that he was familiar with the defense of diminished capacity, and there were no indicators that Petitioner was out of touch or that his capacity was diminished when the crimes were committed. *Id.* at T 106. The evidence was, in fact, contrary to Petitioner's argument; Petitioner emphasized that he did know what happened the day the crimes were committed and stated he was in control and aware. *Id.* at T 107-08. Studstill also explained that he was confined by what Petitioner told him, and Petitioner insisted he was functioning fine on the day the crimes were committed. *Id.* at T 98. Counsel noted that Petitioner even gave a detailed explanation or version of events to counsel and to the police in a videotaped statement. *Id.* at T 100. Studstill stated it was difficult to show that the shooting was accidental when there was testimony that Petitioner would not allow the passengers of the vehicle to drive the victim to the hospital right away. *Id.* at T 103.

Further, Studstill told the state court that he had previously represented people who were not competent to stand trial, or who were legally insane, and he had previously used mental-health mitigation evidence in capital cases. *Id.* at 105. Studstill used his experience

25

and knowledge from trying numerous death penalty cases and his experience of representing clients who were mentally ill to conclude that Petitioner was not incompetent, nor did he suffer from a mental illness. Studstill told the court that he did not have any indication Petitioner was mentally ill, thus he did not investigate Petitioner's mental health background or present mental health mitigation evidence. *Id.* at T 106. Instead counsel's strategy during the penalty phase was to show that Petitioner was a good person who devoted a large amount of time to his family members and was generous towards others. *Id.* at T 111-12. Counsel explained that he did not want the jury to hear any other evidence of violence by Petitioner against other people. *Id.* at T 126. Counsel did agree that had he known of Petitioner's head injury and school problems, he may have presented the evidence to the state court during the *Spencer*[6] hearing. *Id.* at T 141. But counsel again reiterated that Petitioner did not appear to have a mental deficiency and Petitioner even stated in his interview for the presentence investigation that his mental health was "perfect." *Id.*

Petitioner told counsel he had no mental health problems, and none of Petitioner's family members disclosed that he had a closed-head injury as a child, deficient performance in school, and behavioral problems. Assuming counsel's failure to investigate

---

[6] *Spencer v. State*, 615 So.2d 688 (Fla.1993) (holding that during the penalty phase in a death penalty case, a trial court should, after the jury has recommended a sentence of death, hold a hearing to give the defendant, his counsel, and the State an opportunity to be heard, present additional evidence, and allow both sides to comment on or rebut evidence from any presentence or medical report.)

these issues and failure to call witnesses to testify regarding these issues amounts to deficient performance, Petitioner still must demonstrate that he suffered prejudice due to counsel's failure to present mitigation evidence during the penalty phase of the trial.

To determine prejudice from an unreasonable failure to investigate and present favorable or mitigating evidence, "we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). If "the available mitigating evidence, taken as a whole, might well have influenced the jury's appraisal" then prejudice has been shown. *Id.* at 538 (quotation omitted); *see also Windom v. Sec'y, Dept. of Corr*, 578 F.3d 1227, 1249 (11th Cir. 2009); *Wood v. Allen*, 542 F.3d 1281, 1310 (11th Cir. 2008) (in evaluating prejudice, the court "must consider the total available mitigation evidence as adduced pre-trial, at trial, and at the [post-conviction] hearings").

Here, Petitioner first argues that his counsel could have presented testimony from school counselors and family members that he suffered a head injury at the age of three, had impulse control and anger problems as well as a speech impediment, which led to being placed in a school program for the emotionally handicapped (Doc. No. 14 at 15-16). Lilly Evans, Petitioner's mother, testified at the evidentiary hearing that Petitioner was hit by a car when he was three years old. (Ex. H-1 at T 162.) Petitioner lost consciousness and stopped breathing. *Id.* After the accident Petitioner's speech and behavior worsened and he became angry very easily. *Id.* at T 164-66. Petitioner's aunt, Sandra Evans, also described Petitioner's head injury and stated that after recovering, he was not the same and began to stutter. *Id.* at T 145-48.

Petitioner's brother, Oren Javon Evans, testified regarding Petitioner's bad temper. (Ex. H-2 at T 205.) Oren remembered Petitioner would hit other people, men or women, because he would "click" or snap. *Id.* at T 205-08. Oren felt the shooting of the victim, who was his girl-friend, was a mistake as Petitioner would get so angry he could not control himself. *Id.* at T 210. Oren described an incident in which, as a child, Petitioner threw rocks at a police officer, and noted Petitioner was expelled from several schools. *Id.* at T 212, 219.

Barbara McFadden, special education teacher, testified that Petitioner was placed in her classroom at age sixteen. (Ex. H-1 at T 6-10.) McFadden stated that her program was for students that had difficulty managing their emotional and behavioral control and she was going to recommend Petitioner be placed in the program for severely emotionally disturbed students when he was removed from her classroom. *Id.* at T 11. McFadden testified regarding an incident in which Petitioner became upset, left class, and upon McFadden's following, Petitioner told her to keep back because he could not control his anger. *Id.* at T 13-14. McFadden described Petitioner as "having a short fuse" in that he was agitated all the time. *Id.* at T 15. Petitioner's former counselor, Margaret O'Shaughnessy, recalled an incident in which Petitioner pushed another student because he was angry. *Id.* at T 31-32. O'Shaughnessy felt Petitioner had a short, violent trigger and would always stay seven to eight feet away from him. *Id.* at T 33. O'Shaughnessy knew Petitioner had been hit by a car when he was young, and felt he had not received the proper care afterward. *Id.* at T 41.

28

Next, Petitioner asserts that his counsel could have retained a mental health expert to present evidence of his brain damage as mitigation evidence (Doc. No. 14 at 20). Specifically, Petitioner contends that counsel could have presented the testimony of Richard Carpenter, Ph.D., and Henry Dee, Ph.D., that Petitioner had an impulse control disorder that was caused by his head injury. *Id.* at 21. Dr. Carpenter testified on behalf of the defense at the evidentiary hearing. (Ex. H-2 at T 227.) Dr. Carpenter opined that the head injury Petitioner received as a child was the cause of Petitioner's "clicking" behavior, or the inability to manage and control strong levels of rage and anger. *Id.* at T 253. Being under the influence of alcohol would exacerbate Petitioner's anger and impulse control problems. *Id.* Dr. Carpenter noted that when he read the transcripts of the trial, he found it significant that Petitioner had been alone with the victim before the crime and he did not kill her then. *Id.* at T 257-58. Petitioner instead shot the victim in front of three other people, indicating that Petitioner lost control. *Id.* at T 260. Dr. Carpenter stated that the facts do not indicate that the murder was premeditated. *Id.*

Dr. Carpenter testified that Petitioner was under the influence of an extreme mental or emotional disturbance at the time of the crime. *Id.* at T 269. Dr. Carpenter stated that at the time Angel Johnson was shot Petitioner was not able to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, i.e., Petitioner's capacity was substantially impaired. *Id.* at T 271. After reading the State expert's report, Dr. Carpenter noted that Petitioner was suffering from paranoia. *Id.* at T 274. As such, Petitioner would perceive people laughing at his expense as an attack or put down and

29

thus "clicking" behavior would be triggered. *Id.* at T 274-75. Dr. Carpenter was not aware that Petitioner had testified at trial that he was aware of what he was doing and was functioning fine despite having consumed alcohol. *Id.* at T 307. However, Dr. Carpenter stated that this testimony would not affect his opinion or diagnosis as he did not find Petitioner's testimony at trial to be reliable. *Id.*

Dr. Dee, clinical neuropsychologist, also testified as a defense witness. (Ex. H-3 at T 103.) Dr. Dee opined that Petitioner likely had a brain injury stemming from the accident as a child that left him with speech and language problems as well as problems with impulse control. *Id.* at T 112. Drinking alcohol to excess would further affect the brain damage sustained by Petitioner. *Id.* at T 116. Petitioner's I.Q. was average, but there was an 18 point difference between his verbal and performance I.Q., which is seen in people who have damage to the left hemisphere of the brain. *Id.* at T 117-19. Dr. Dee concluded Petitioner likely has damage to his frontal lobe, which is the region of the brain that affects planning and self-control. *Id.* at T 123.

Dr. Dee testified that the shooting was consistent with an impulsive act that was committed while Petitioner was under the influence of an extreme mental or emotional disturbance. *Id.* at T 127-29. Dr. Dee also believed that Petitioner's capacity to appreciate the criminality of his conduct was impaired when the crime took place. *Id.* at T 130. Dr. Dee told the court that Petitioner's actions after the shooting took place were not a good indication of his state of mind when he shot the victim because people who have this type of condition act impulsively, and after the action, realize that they should not have done

30

the action. *Id.* at T 133-34.

The State also called an expert witness, Harry McClaren, Ph.D., to testify at the evidentiary hearing. Dr. McClaren believed Petitioner probably had a brain injury of a diffuse type, which could account for impulsive behavior. *Id.* at T 24. Dr. McClaren concluded that Petitioner has antisocial personality disorder, which includes a pattern of rule-violating behavior, impulsiveness, failing to plan ahead, committing acts that are grounds for arrest, repeated aggressiveness, lack of remorse, and reckless disregard for his own safety or the safety of others. *Id.* at T 64-65. However, Dr. McClaren did think that Petitioner was conscious of what he was doing on the night the crimes were committed. *Id.* at T 67. Taking into consideration the events leading up to the murder and following the shooting, Dr. McClaren concluded Petitioner was in control and was not suffering from an extreme emotional disturbance or a mental illness that involves a loss of contact with reality. *Id.* at T 69, 75. McClaren also noted that if a jury heard all of the evidence regarding Petitioner's history that they could "conceivably get the idea that this is a dangerous person." *Id.* at T 46.

Petitioner also testified on his own behalf, stating he was not sure how much alcohol he had consumed on the day of the offenses, but he thought he had only drunk about one liter. *Id.* at T 87-88. Petitioner said that he told police he was not intoxicated because he was telling them what they wanted to hear. *Id.* at T 88. Petitioner told the court that he did not threaten Angel Johnson while in jail, and his comment about killing a woman was directed to Tamiko Williams, the mother of one of his children. *Id.* at T 91. Petitioner also

31

discussed his background, such as the fact that he was a "jack boy" or person who robbed drug dealers at gun point. *Id.* at T 94.

The issue before this Court is whether the fact finder, presented with all of the foregoing mitigation evidence, "would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695. The Florida Supreme Court found that Petitioner had not established prejudice because the mitigation evidence presented would likely have been more harmful then helpful. *Evans*, 946 So. 2d at 13. This Court agrees.

In *Wong v. Belmontes*, 130 S.Ct 383, 386-87 (2009) (*per curiam*), the United States Supreme Court found Belmontes could not establish a reasonable probability that the jury would have rejected a capital sentence if it had the benefit of additional testimony presented at the evidentiary hearing. Belmontes was convicted of murder after he bludgeoned a woman to death by striking her in the head and then stealing her stereo to pawn for money to buy beer and drugs. *Id.* at 384. The additional mitigating testimony Belmontes sought to present in post-conviction proceedings was related to Belmontes' terrible childhood, his abusive and alcoholic father, his poor grades, the tragic deaths of family members, and his mental state or behavior. *Id.* at 387. Belmontes also presented testimony regarding his religious conversion and counseling of other inmates. *Id.* The Court found some of the evidence was "cumulative of the humanizing evidence" and the other evidence would have triggered the admission of the fact that Belmontes had committed another murder. *Id.* at 387-88. The Court determined counsel's decision to

32

present limited mitigation evidence because of the risk of opening the door to aggravating or unfavorable evidence did not prejudice the outcome of the penalty phase. *Id.*

Similar to *Belmontes*, in the instant case Petitioner argues counsel failed to present additional mitigation evidence that also would have shown that he was an angry, violent person. Counsel testified at the evidentiary hearing that he did not want the jury to hear about Petitioner's violence against any other individual. (Ex. H-1 at T 126.) Although in the instant case defense counsel did not know about or had not investigated the additional mitigation evidence prior to the penalty phase of trial, the Court can still view counsel's actions as strategic. *See Strickland*, 466 U.S. at 689. The additional evidence presented at the post-conviction evidentiary hearing would have furthered the view that Petitioner was merely a violent person who had a history of threatening and hitting other people, especially women. Even if Studstill's failure to present the above evidence as mitigation did not amount to strategy, Petitioner still has not demonstrated prejudice.

The United States Supreme Court reversed the Eleventh Circuit Court of Appeals in *Porter v. McCollum*, 130 S.Ct. 447, 454 (2009), finding the Florida Supreme Court's determination that counsel's failure to present mitigating evidence at the penalty phase of trial did not prejudice Porter to be unreasonable. In *Porter* the petitioner was convicted of two counts of first-degree murder for shooting his former girlfriend and her new boyfriend. *Id.* at 448. Counsel did not present evidence of Porter's "abusive childhood, his heroic military service and the trauma he suffered because of it, his long-term substance abuse, and his impaired mental health and mental capacity." *Id.* at 449. In weighing the

33

aggravating circumstances against the mitigating circumstances, the Court found the aggravating circumstances were not as substantial as stated by the sentencing judge. *Id.* at 454. Moreover, the Court found that the Florida Supreme Court either did not consider, or "unreasonably discounted" the mitigation evidence produced at the post-conviction hearing. *Id.* The Florida Supreme Court did not discuss the mental health evidence in its discussion of statutory and non-statutory mitigation. *Id.* at 455 n. 7. The Court noted that even if mental health evidence did not rise to the level of establishing a statutory mitigator, that the evidence could "nonetheless be considered by the sentencing judge and jury as mitigating." *Id.* (citing *Hoskins v. State*, 965 So. 2d 1, 17-18 (Fla. 2007) (*per curiam*)).

In the instant case the Florida Supreme Court did address the new mitigating evidence in its opinion, and found that although the evidence established Petitioner suffered from mental health problems, the evidence also showed a history of escalating violence. *Evans*, 946 So. 2d at 13. The court also noted that the mitigation evidence was in direct conflict with Petitioner's testimony during the guilt phase. *Id.* The Florida Supreme Court concluded that evidence regarding Petitioner's violence against classmates and women, along with his occupation as a "jack boy" would have been more aggravating the mitigating. *Id.* This Court does not find that the Florida Supreme Court's determination that the mitigation evidence would have been more harmful than helpful is unreasonable. The state court did not completely discount the evidence or fail to consider it as the post-conviction court did in *Porter*. In the instant case, the evidence established escalating violence and conflicting testimony about whether Petitioner had an impulse control

34

disorder that was exacerbated by alcohol consumption, whereas in *Porter* the proffered post-conviction testimony showed that the petitioner suffered trauma due to his heroic military service. Unlike *Porter*, the Florida Supreme Court did not unreasonably reject testimony that would have been beneficial to Petitioner during the penalty phase of the trial.

Petitioner contends that the state court's decision is contrary to clearly established law in that his case is similar to the facts in *Wiggins v. Smith*, 539 U.S. 510 (2003). In *Wiggins* the petitioner was convicted of first-degree murder, robbery, and two counts of theft based upon the drowning of a 77-year old woman in her own bathtub and the ransacking of her apartment. *Id.* at 514-15. During the state post-conviction proceedings the petitioner sought to introduce mitigating evidence that: his mother was a chronic alcoholic and was physically abusive to her children, he and his siblings were frequently left home with no food and were forced to eat garbage and paint chips, he was hospitalized after his mother intentionally burned his hand on the stove, his mother had sex with men while her children slept in the same bed, he was placed in foster care where he was physically abused, molested and raped, and he lived on the streets after running away from these foster care system. *Id.* at 516-17. Additional mitigation evidence was presented relating to the petitioner's low IQ, personality disorder, and difficulty coping. *Id.* at 523.

This Court finds *Wiggins* is distinguishable from the instant case. The *Wiggins* Court found the mitigating evidence "powerful" and combined with the fact that the petitioner had no record of violent conduct, concluded that there is a reasonable probability that had

35

the jury heard this evidence, the outcome of the penalty phase would have been different. *Id.* at 534-38. In contrast, the evidence that Petitioner suffered from a head injury that may have triggered an impulse control disorder is outweighed by the numerous accounts of violent conduct on the part of the Petitioner and the fact that Petitioner testified that he knew what he was doing and was in control when the shooting occurred.

Although Petitioner argues that his poor behavior is directly related to his mental condition, one expert disagreed with this theory. That expert, Dr. McClaren, pointed out that, contrary to Petitioner's arguments now, at trial Petitioner was adamant that he was in control and knew what he was doing, and his actions taken after the shooting are indicative of that fact. The aggravating circumstances in Petitioner's case are that Petitioner committed the murder while on felony probation, and that Petitioner had been previously been convicted of crimes of violence. While some mitigating evidence regarding evidence of brain damage and mental illness could have been presented, along with some evidence of good character, such evidence was outweighed by evidence that Petitioner's history showed an increase in violence each year toward other students, teachers, women he dated, and that Petitioner committed numerous crimes as a jack boy, in which he threatened people with a gun.

The testimony at trial contradicts this newly suggested mitigation evidence. Testimony was presented that Petitioner told another inmate he would kill Angel Johnson if he found her upon release. Also, Petitioner's actions after the shooting, in which he did not allow the occupants of the vehicle to take Angel Johnson to the car and he threatened

36

to kill them if they told police, contradict the opinions that Petitioner was suffering from a mental disturbance or was unable to appreciate the criminality of his conduct.

The Court concludes that although counsel did not conduct a detailed investigation into Petitioner's mental health background, counsel's actions do not amount to deficient performance because he was affirmatively told that Petitioner had no mental health problems. Neither Petitioner nor his family members told counsel that he suffered a head injury as a child and that he had behavioral problems in school. Additionally, Petitioner's behavior did not put counsel on notice that he suffered from any mental instability. Further investigation into Petitioner's mental health background also would have been inconsistent with Petitioner's defense at the penalty phase that he was a good person with a non-violent history. Had counsel investigated Petitioner's mental health background and presented the evidence that was set forth at the state post-conviction evidentiary hearing, the jury also would have heard evidence of Petitioner's increasingly violent nature, especially toward women.

This Court is permitted to speculate how the mitigation evidence presented during the state post-conviction proceedings would have affected the outcome of the penalty phase. *See Sears v. Upton*, 130 S.Ct 3259, 3266-67 (2010) (holding that *Strickland* requires a court to "'speculate as to the effect of the new evidence - regardless of how much or how little mitigation evidence was presented during the initial penalty phase.'") (quotation omitted). However, this Court concludes that there is no reasonable probability that inclusion of the additional mitigation evidence would have resulted in a different outcome

37

at the penalty hearing. The Court cannot say that the state court's application of the *Strickland* prejudice standard was objectively unreasonable. Accordingly, this claim is denied pursuant to § 2254(d).[7]

### C.   Claim Three

Petitioner asserts that trial counsel was ineffective for failing to request jury instructions on the mental health statutory mitigators based on evidence at trial that Petitioner was drinking prior to the shooting and may have been intoxicated at the time of the shooting (Doc. No. 1 at 36-37). In particular, Petitioner points to three places in the trial testimony where he admits that he consumed alcohol prior to the shooting (Ex. A-14 at 1848, 1824, 1837) and to witness testimony that he had been drinking alcohol earlier in the day. (Ex. A-11 at 1220.) Petitioner contends that he suffers from an impulse control disorder that is exacerbated by excessive alcohol consumption and that he was prejudiced because, "had counsel requested statutory mitigation jury instructions, the jury would have been instructed on the mental health statutory mitigators, thus creating a reasonable probability that the jury would not have recommended the death sentence" (Doc. No. 22 at 15).

Petitioner raised this claim in his Rule 3.851 motion for post-conviction relief which the state trial court denied. The Florida Supreme Court affirmed. *Evans*, 946 So.2d at 1. The Florida Supreme Court noted that the trial court found, and the record supported, that

---

[7] Although the Court denies claim two, as is noted, *infra*, the Court grants a certificate of appealability with respect to this claim, as jurists of reason could find it debatable that the denial of this claim was correct.

because Petitioner's own trial testimony was that he was only slightly intoxicated and not drunk, counsel could not be deemed deficient for failing to present a mitigator that was not supported by the record or was inconsistent with the evidence and testimony presented by Petitioner. *Id.* at 13-14. The court further noted that the statutory mitigators were inconsistent with the defense theory that the shooting was an accident and trial counsel's decision not to request instructions on statutory mitigation for lack of grounds was reasonable. *Id.* at 14. Finally, the court determined that Petitioner had not demonstrated that he was prejudiced by counsel's failure to request the statutory instructions. *Id.*

The state court's findings regarding the deficiency prong are supported by the record. The mental health statutory mitigators would have been inconsistent with Petitioner's testimony during trial. Petitioner testified under oath that, although he had been drinking prior to the shooting, he was focused on everything he was doing; he had a clear recollection of what happened prior to and during the shooting; and prior to the shooting he was only slightly intoxicated, and thus was perfectly aware of everything and was functioning "fine." (Ex. A-14 at T 1824, 1837-38, 1846-47.) Counsel is not deficient for failing to present a mitigator that is unsupported by the record or is inconsistent with the testimony presented by the defendant. *See, e.g., Dasher v. A.G., Fla.,* 574 F.3d 1310 (11th Cir. 2009) (noting that it is not unreasonable for an attorney to rely on criminal history information provided by client); *United States v. Pease,* 240 F.3d 938, 942 (11th Cir. 2001) (holding that reliance on a client's statements not per se deficient performance).

Furthermore, the record reflects that Petitioner's actions subsequent to the shooting

are not indicative of significant intoxication. At trial, Petitioner was able to give a detailed account of the shooting and his actions immediately thereafter. (Ex. A-14 at 1837-46, 1852-59.) Petitioner admitted that he initially lied to the police regarding his involvement in the crime. *Id.* at T 1846-47, 1858. Testimony was presented during trial that Petitioner prevented other occupants of the car from taking the victim to be to the hospital immediately after the shooting. (Ex. A-10 at T 1018-21, 1073) and that Petitioner threatened other passengers in the car not to tell authorities who shot the victim or he would kill them and their families. *Id.* at T 1021, 1072-73, 1076-77. This is inconsistent with Petitioner's contention that he had a diminished or impaired mental capacity because of excessive alcohol consumption. *See Buford v. State*, 403 So. 2d 943, 953 (Fla. 1981) (ability of a defendant to give a detailed account of the crime inconsistent with contention that he had a diminished or impaired mental capacity because of excessive consumption of alcohol, drugs or marijuana); *Bryan v. Singletary*, 140 F.3d 1354, 1360 (11th Cir. 1998) (defendant's elaborate attempts to cover tracks after murder inconsistent with diminished capacity).

Even if Petitioner had been intoxicated, the mental health mitigators would have been inconsistent with Petitioner's theory of defense during the trial. During the guilt phase of the trial, evidence was presented, and Petitioner testified, that the shooting was accidental. (Ex. 14 at 1864.) At the evidentiary hearing, defense counsel testified that Petitioner had insisted that the shooting was an accident and, even though other possible defenses were considered, defense counsel relied on Petitioner's statements. (Ex. H-1 at T 64, 94.) Counsel's actions are not unreasonable if they are substantially influenced by the

40

defendant's own statements or actions. *Strickland*, 466 U.S. at 691.

Petitioner relies on three Florida Supreme Court cases in support of his position that the statutory mental health mitigators should have been requested by trial counsel (Doc. No. 22 at 15-16) (discussing *Bryant v. State*, 601 So. 2d 529 (Fla. 1992); *Smith v. State*, 492 So.2d 1063 (Fla. 1986); *Stewart v. State*, 558 So. 2d 416 (Fla. 1990)). These cases are not dispositive on this issue. In each of the cited cases, evidence was presented that the defendant was intoxicated around the time of the murder or suffered from a pervasive mental condition that affected him every day. *See Geralds v. State*, 674 So. 2d 96, 101 n.12 (Fla. 1996) (discussing the cases relied upon by Petitioner). The record does not reflect evidence that Petitioner suffered a recurring mental condition, nor does it show Petitioner's impairment other than the use of alcohol the day of the shooting and no instruction on the statutory mental health mitigators was required. *Duest v. State*, 855 So. 2d 33, 42 (Fla. 2003) (citing *Cooper v. State*, 492 So. 2d 1059, 1062 (Fla. 1986) ("Evidence of consumption of intoxicating substances, without more, does not require an instruction on this mitigator.")).

Trial counsel's failure to request a statutory mitigator was not based on ignorance of the law as implied by Petitioner (Doc. No. 22 at 16). At the evidentiary hearing, defense counsel testified that he had read cases on statutory mitigation and he had read the Florida statutes on the subject and didn't believe that he had grounds to request the mental health mitigators (Exhibit H-1 at T 90, 95.) As such, defense counsel made a tactical decision to not request a mitigator to which Petitioner was not entitled. Under *Strickland*, "strategic

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgements support the limitations on investigation." 466 U.S. at 690-91. Accordingly, Petitioner has failed to advance a persuasive argument that trial counsel's decision not to request the statutory mental health mitigators was unreasonable or that his decision can be construed as conduct outside the wide range of professional representation.

Even if trial counsel erred by not requesting the statutory mitigators, Petitioner has not shown that he was prejudiced by the omission or that "counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). The Florida Supreme Court determined that Petitioner did not demonstrate that he was prejudiced by counsel's failure to request the instructions because he had not shown that the court would have given the instructions on statutory mitigation to the jury if they had been requested. *Evans v. State*, 946 So.2d at 14. As discussed above, Florida law requires a showing evidence of impairment other than the consumption of intoxicating substances before the statutory mental health mitigator instructions are required. *See Duest*, 855 So.2d at 42. The Florida Supreme Court noted, and the record supports, that:

> At the guilt phase, there was no evidence presented that Evans suffered a pervasive mental condition or that he was under the influence of alcohol to the extent that he could not control his actions. The only evidence of Evans' probable mental state at the time of the murder was his trial testimony and, as in *Duest*, this testimony does not support an instruction on the mental health statutory mitigators.

42

*Evans,* 946 So.2d at 14-15 (internal punctuation omitted). Without evidence of impairment, a trial court's refusal to give jury instructions on the mental health statutory mitigators would have been proper.

Furthermore, each statutory mitigator was addressed by the trial court in its independent determination of the aggravating and mitigating factors and the trial court found no evidence to support the mental health mitigators (Ex. A-4 at 9-12.) Petitioner has not demonstrated a reasonable probability that his sentence would have been different had counsel requested instructions on mental health statutory mitigation based on Petitioner's use of alcohol prior to the shooting.

Because Petitioner has not established that trial counsel was deficient for failing to request statutory mitigators or that he was prejudiced by counsel's failure to do so, claim three is denied pursuant to § 2254(d).

D.    *Claim Four*

Petitioner asserts that the trial court erred in permitting the state to elicit hearsay testimony through its police officer witnesses, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 9 and 22 of the Florida Constitution (Doc. No. 1 at 38 ). Specifically, Officer Wendy Yorkey testified that Erica Foster identified Petitioner as the person who shot the victim after first giving a false statement.[8] (Ex. A-10 at T 1178-79.) Lieutenant Mark Laderwarg also stated that Sammy

---

[8] Foster originally told police officers that the victim was shot after selling a white man bad drugs. (Ex. A-10 at T 1025.)

Hogan told him Petitioner committed the offense after admitting he also lied in his first statement to police.[9] (Ex. A-10 at T 1199-1200.) Defense counsel objected to the testimony as inadmissible hearsay. *Id.* at T 1179, 1199. The trial court overruled the objections, finding the statements constituted excited utterances. *Id.* at T 1179, 1200.

Petitioner raised this claim on direct appeal as Point I. (Ex. B.) The Florida Supreme Court agreed that the statements were not admissible as excited utterances, but found the admission of the statements was not error pursuant to section 90.801, Florida Statutes, because both Sammy Hogan and Erica Foster, the declarants, testified at trial and were subject to cross-examination. *Evans v. State*, 838 So. 2d 1090, 1093-94 (Fla. 2002).

Generally, federal courts do not review a state court's admission of evidence in habeas proceedings. *Mills v. Singletary*, 161 F.3d 1273, 1289 (11th Cir. 1998) (citing *McCoy v. Newsome*, 953 F.2d 1252, 1265 (11th Cir. 1992)). A federal court "will not grant federal habeas corpus relief based on an evidentiary ruling unless the ruling affects the fundamental fairness of the trial." *Mills*, 161 F.3d at 1289 (citing *Baxter v. Thomas*, 45 F.3d 1501, 1509 (11th Cir. 1995)). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" *Snowden v. Singletary*, 135 F.3d 732, 737 (11th Cir.1998) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)).

In the present case, Petitioner has not demonstrated that the evidentiary rulings

---

[9] Hogan testified that he first told police officers the victim was shot by a man in a two-door Cougar. (Ex. A-10 at T 1079.)

made by the trial court with regard to these matters were erroneous or deprived him of a fundamentally fair trial. The jury had already heard similar testimony concerning Foster and Hogan's identification of Petitioner as the person who committed the murder, as both Foster and Hogan testified at the trial (Exs. A-9 & A-10 at T 1025, 1079.)  Additionally, Foster and Hogan both testified regarding the false statements they made to police. (Ex. A-10 at T 1025, 1079). Therefore, Petitioner has failed to establish that the alleged errors by the trial court with regard to the hearsay testimony had a "substantial and injurious effect or influence in determining the [jury's] verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 622 (1993) (the petitioner must demonstrate that the "trial error" had a substantial and injurious effect or influence in determining the jury's verdict).

Further, although the trial court overruled defense counsel's objections to the hearsay testimony by improperly finding the statements were excited utterances, this Court agrees with the Florida Supreme Court's determination that the admission of the hearsay statements did not amount to reversible error.  Hearsay is defined in Florida as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (1998). Pursuant to this definition, the police officers' testimony regarding Hogan and Foster's statements would not amount to hearsay because Hogan and Foster testified at trial and told the jury these same statements.

Petitioner asserts that the hearsay statements violate *Crawford v. Washington,* 541 U.S. 36 (2004). In *Crawford,* the United States Supreme Court held that out-of-court statements

45

that are "testimonial" are inadmissible at trial pursuant to the Confrontation Clause unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. However, *Crawford* does not retroactively apply to cases on collateral review. *Whorton v. Bockting*, 549 U.S. 406, 417 (2007); *In re Diaz*, 471 F.3d 1262, 1264 (11th Cir. 2006). Petitioner's direct appeal became final in 2002, prior to the Court's decision in *Crawford*. Moreover, even if *Crawford* were retroactive, Petitioner would not be entitled to relief. *Crawford* is not applicable in the instant case because "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his [or her] prior testimonial statements." 541 U.S. at 59; *see also Campbell v. Herdon*, 302 F. App'x 864, 865 (11th Cir. 2008). Both Erica Foster and Sammy Hogan testified at trial and were subject to cross-examination, therefore the introduction of their prior statements through the testimony of Officer Yorkey and Lieutenant Laderwarg was not in error.

Petitioner has not demonstrated that the state court's finding that the admission of hearsay testimony was not in error is contrary to, or involves an unreasonable application of, clearly established federal law. The instant claim is denied.

### E.  Claim Five

Petitioner alleges that the trial court erred in denying his motion for mistrial based upon comments made by the prosecutor during closing arguments in the guilt phase of trial (Doc. No. 1 at 41). Petitioner contends that the comments improperly shifted the burden of proof to the defense, in violation of the Fifth, Sixth, and Fourteenth Amendments

of the United States Constitution. *Id.*

During the State's rebuttal closing arguments, the prosecutor told the jury:

> Had we had the gun we could test this theory of how easily it was to fire, whether it was a trigger pull, what the weight of the trigger pull was, whether it had the ability to misfire on occasions like that. We would know all of those things. Those are things that you would know in evaluating this case.
>
> But I suggest to you that the Defendant knew that the gun did not have a slight trigger pull, that it didn't have any problems, that the gun didn't misfire.
>
> Had we had that gun we all would be sitting here with no doubt whatsoever, let alone a reasonable doubt, that the Defendant intended on killing her.

(Ex. A-15 at T 2089.)  Later the prosecutor made similar statements to the jury:

> As I suggested to you earlier, we could have the gun.  We could've done the test right then and there had he gone to the police department. He could have explained it that night.
>
> Instead he knew exactly what he did and he needed time to formulate his plan, which he said. He needed time to formulate his plan. And that's what he did. That's the truth. Formulate his plan, not of how to avoid this assumption, but formulate the plan of how to avoid - - .

*Id.* at T 2098-99. Defense counsel objected and moved for a mistrial. *Id.* at T 2099. The trial

court denied the motion. *Id.* at T 2100.

Petitioner raised this claim on direct appeal as Point II.  (Ex. B)  The Florida

Supreme Court, in rejecting Petitioner's arguments, stated the following:

> Evan next argues that the trial judge erred in denying his motion for mistrial based on comments made by the prosecutor in her closing argument. Evans' defense and his testimony at trial centered around his assertion that the murder weapon discharged accidentally.   Evans also testified that although the shooting was an accident, he did not immediately go to the

47

police because he was scared and paranoid, but that he planned to call the police the next morning to explain what had happened. These themes were repeated in the defense counsel's closing argument.

In her rebuttal argument, the prosecutor made several comments direct to Evans' defense, making the point that if the shooting was really an accident as Evans claimed, he would not have disposed of the gun and would have immediately gone to the police and explained the circumstances. The prosecutor further suggested that had Evans not disposed of the gun, it could have been tested to determine whether, in fact, it had a slight trigger pull or was prone to misfire or fire accidentally. She suggested that because Evans knew that the gun did not malfunction or fire accidentally, he disposed of it, and as a result, the State was unable to confirm these facts. Defense counsel objected to these comments [n 2] and moved for a mistrial. The motion was denied. On appeal, Evans argues that the trial court abused its discretion in denying the motion. He contends that the prosecutor's insinuation that he disposed of the gun was not supported by the evidence and that the comments at issue improperly shifted the burden of proof to the defendant to prove his innocence. We disagree.

> [ n 2] The State urges that because defense counsel objected to this line of argument only after the prosecutor brought it up a second time, Evans' objections to the earlier portion of the prosecutor's comments were not preserved for appeal. We disagree. On the record, defense counsel's objection covered both portions of the prosecutor's arguments, sufficiently placed the trial judge on notice that an error may have occurred, and provided an opportunity to correct the error; thus, the objection was sufficient to preserve the issue for appeal.

Normally, "the state cannot comment on a defendant's failure to produce evidence to refute an element of the crime, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence." *Jackson v. State*, 575 So. 2d 181, 188 (Fla. 1991). However, a prosecuting attorney may comment on the jury's duty to analyze and evaluate the evidence and state his or her contention relative to what conclusions may be drawn from the evidence. *See Ruiz v. State*, 743 So. 2d 1, 4 (Fla. 1999). In this instance, Erica Foster, who was in the car when the shooting occurred, testified that after Evans shot Johnson, he gave the gun to Lino Odenat and told him to dispose of it. She further testified that once Evans and Odenat exited, the gun was no longer present in the car. From this evidence, the prosecutor was entitled to argue that the jury could and

should conclude that Evans was responsible for disposing of the gun.

We further reject Evans' arguments that the prosecutor's comments improperly shifted the burden of proof. Evans took the stand in his own defense, and by doing so, he placed his credibility at issue. Accordingly, the prosecution was entitled to highlight inconsistencies between Evans' testimony and other evidence in the case and to expose contradictions and improbabilities in Evans' version of events.   The clear import of the challenged comment was to discredit Evans' testimony by pointing out that his actions in disposing of the gun were inconsistent with his claim that the shooting was an accident. This was fair comment on the evidence, and we find no error.

*Evans*, 838 So. 2d at 1094-95.

Respondents argue Petitioner is not entitled to relief as this is an issue of state law. Pursuant to 28 U.S.C. § 2254, a state prisoner is entitled to federal habeas corpus relief only if he is held in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As noted by the United States Supreme Court, a mere error of state law does not constitute a denial of due process. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Jamerson v. Sec'y for Dept. of Corr.*, 410 F.3d 683, 688 (11th Cir. 2005). As noted above, Petitioner raised this claim on direct appeal. (Ex. B. at 22.) Petitioner argued the trial court erred in denying his motion for mistrial based on comments by the prosecutor during closing arguments in the guilty phase which improperly shifted the burden of proof, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. *Id.* The instant claim mirrors the arguments set forth in the state court direct appeal, and has raised an issue that, if determined to have merit, also constitutes a violation of federal law.

Claims based on the statements of a prosecutor are assessed using a two-pronged analysis: first, the court must determine whether the comments at issue were improper,

and, second, whether any comment found to be improper was so prejudicial as to render the entire trial fundamentally unfair. *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir. 1987); *see also Cargill v. Turpin*, 120 F.3d 1366, 1379 (11th Cir.1997).    A trial is rendered fundamentally unfair if "there is a reasonable probability that, but for the prosecutor's offending remarks, the outcome . . . would have been different . . . . [A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir. 1988) (citations and quotations omitted). In *Drake v. Kemp*, the Eleventh Circuit explained:

> Improper argument will only warrant relief if it renders a petitioner's trial or sentencing fundamentally unfair.    That determination depends on whether there is a reasonable probability that, in the absence of the improper arguments, the outcome would have been different.    A reasonable probability is a probability sufficient to undermine confidence in the outcome.

762 F.2d 1449, 1458 (11th Cir. 1985)(citations and quotations omitted).

While the prosecutor's comments that Petitioner failed to give the police the gun to determine whether it misfired is an improper statement, the trial court instructed the jurors that the State alone bore the burden of proof and the defense did not have to present any evidence. (Ex. A-15 at T 2118.) A prejudicial remark that appears to shift the burden of proof can be rendered harmless by curative instructions to the jury. *United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) (stating prosecutors "must refrain from making burden-shifting arguments which suggest that the defendant has an obligation to produce any evidence or to prove innocence") (citations omitted); *Duncan v. Stynchcombe*, 704 F.2d 1213, 1215-16 (11th Cir. 1983) (citations omitted).    Such a curative instruction was given here.

In *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999) the Eleventh Circuit found the prosecutor's comment that the defense had resources and the opportunity to produce evidence themselves did not improperly shift the burden of proof. The court reasoned that the prosecutor told the jury that defendant had opportunity to produce a handwriting expert to rebut State witness's testimony, not that defendant had any burden to procedure rebuttal evidence. *Id.* Moreover, the court noted that the court reminded the jury that the government bore the burden of proof. *Id.* Similar to *Paul*, the improper comment in this case did not impermissibly shift the burden of proof to the defense as the jury was instructed that the State had the burden of proof and the State did not tell the jury that the defense had a burden to produce rebuttal evidence. *See Adams v. Wainwright*, 709 F.2d 1443, 1447 (11th Cir. 1983) (a jury is presumed to follow jury instructions).

There is no indication that the prosecutor's comments rendered the trial fundamentally unfair, or that but for the prosecutor's remarks, the outcome of the trial would have been different. Petitioner has not shown that the state court's determination was objectively unreasonable, or based upon an unreasonable determination of facts in light of the evidence. Accordingly, this claim is denied pursuant to § 2254(d).

F.     *Claim Six*

Petitioner claims that he was denied due process, in violation of the Fifth, Eighth, and Fourteenth Amendments, because of the incomplete and confusing jury instructions given at trial (Doc. No. 1 at 43-44). Petitioner asserts that he was charged with kidnaping under two separate theories, with the intent to terrorize or with the intent to facilitate the

commission of another felony (Doc. No. 14 at 38). Petitioner argues that the jury was never instructed on the theory that the kidnaping was committed with the intent to facilitate the commission of another felony. *Id.* Moreover, Petitioner contends that the result was confusing and misleading instructions on kidnaping that impermissibly shifted the burden of proof on the element of intent. *Id.* at 39. Finally, Petitioner notes that the evidence was insufficient to support a conviction of kidnaping. *Id.*

Kidnaping is defined in the Florida Statutes as follows:

The term "kidnapping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will without lawful authority, with intent to:

1. Hold for ransom or reward or as a shield or hostage.

2. Commit or facilitate commission of any felony.

3. Inflict bodily harm upon or to terrorize the victim or another person.

4. Interfere with the performance of any governmental or political function.

§ 787.01(1)(a), Fla. Stat. (1998). The State charged Petitioner, in the indictment, with kidnaping with intent to commit or facilitate the commission of the murder or with intent to inflict bodily harm or to terrorize Angel Johnson, Erica Foster, or Sammy Hogan. (Ex A-3 at 452.) At the close of evidence, the state trial court instructed the jury on the charge of kidnaping as follows:

Before you can find the Defendant guilty of kidnaping the State must prove the following three elements beyond a reasonable doubt:

Number 1: Wydell Jody Evans forcibly, secretly or by threat confined, abducted or imprisoned Angel Johnson, Erica Foster or Sammy Hogan against their will.

Number 2: Wydell Jody Evans had no lawful authority.

And Number 3: Wydell Jody Evans acted with the intent to inflict bodily harm upon or to terrorize the victim or another person.

In order to be kidnaping the confinement, abduction or imprisonment:

A: Must not be slight, inconsequential or merely incidental to the felony.

And B: Must not be of the kind inherent in the nature of the felony.

And C: Must have some significance independent of the felony in that it makes the felony substantially easier of commission or substantially lessens the risk of detection.

(Ex. A-15 at T 2109-10.) The trial court failed to instruct the jury, in part number 3, that

Petitioner acted with intent to commit or facilitate the commission of a felony, which was

the other theory of kidnaping included in the indictment. *See* Fla. Std. Jury Inst. 9.1.

However, while the instruction did not list "with the intent to facilitate the commission of

a felony," the instruction included the elements a jury must consider to convict a defendant

of kidnaping with intent to facilitate the commission of a felony, which were stated in parts

A, B, and C. *Id.* at T 2109-10.

The instant claim was raised as Point III on direct appeal (Ex. B.) The Florida

Supreme Court rejected Petitioner's arguments, finding first that Petitioner failed to object

to the jury instructions, and thus relief could be granted only if the alleged error in the

instructions amounted to fundamental error. *Evans*, 838 So. 2d at 1096. The Court

concluded that while the jury instruction commingled "the elements of kidnaping with the

intent to terrorize and kidnaping with the intent to facilitate a felony," the instruction

contained "all of the essential elements of kidnaping with the intent to terrorize, which was the sole theory of kidnaping submitted to the jury." *Id.* The Court further stated the additional elements of proof contained in the jury instruction actually benefitted the defendant, as it made it more difficult to prove the kidnaping charge. *Id.*

Respondents argue that claim six raises only an issue of state law and thus Petitioner is not entitled to relief. In general, questions of state law rarely raise issues of federal constitutional significance and, therefore, "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir.1983); *see also Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir.2000) (stating that the writ of habeas corpus was not enacted to enforce state-created rights). Where the claim is merely that a jury instruction was incorrect under state law, federal habeas relief is not available. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). "An error in instructing the jury cannot constitute a basis for habeas relief unless the error so infected the entire trial that the resulting conviction violates due process." *Jacobs v. Singletary*, 952 F.2d 1282, 1290 (11th Cir. 1992) (quotation omitted). "It is not sufficient that the instruction was undesirable, erroneous, or even universally condemned." *Id.* (quotation omitted).

Consequently, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. *Jones v. Kemp*, 794 F.2d 1536, 1540 (11th Cir. 1986). A jury charge is adequate if, when viewed as a whole, it fairly and correctly states the issues and law.

54

*United States v. Russell*, 717 F.2d 518, 521 (11th Cir. 1983).

The jury instruction of which Petitioner complains did not render the trial fundamentally unfair. Although the jury instruction did commingle the elements of intent to inflict bodily harm or terrorize with intent to commit or facilitate a felony, this instruction was not unduly prejudicial to Petitioner. While the Florida Supreme Court found that the State only proceeded on one theory of kidnaping, the court was incorrect in this regard, as the State argued both charged theories of kidnaping to the jury. (Ex A-15 at T 2047-49.) The State first asserted that Petitioner had committed kidnaping with intent to inflict bodily harm or to terrorize the victims. *Id.* at T 2048-49. Next the State argued the evidence showed that Petitioner committed the kidnaping with the intent to facilitate the commission of the murder. *Id.* at T 2048-49. While the state trial court left out a portion of the jury instruction, the jury was instructed on every element the State must prove to convict one of kidnaping with intent to facilitate the commission of a felony. Aside from the deletion of one line in the jury instruction, when viewed as a whole the instructions given at trial fairly and correctly stated the law and contained the same language as the Florida Standard Jury Instructions. There is no indication that the error so infected the trial that Petitioner's resulting conviction violates due process.

Moreover, the kidnaping instruction did not impermissibly shift the burden of proof to Petitioner in this case. Petitioner cites to *Carter v. Montgomery*, 769 F.2d 1537 (11th Cir. 1985), to support his contention. However, in *Carter*, the Eleventh Circuit found that the jury instruction relating to malice impermissibly shifted the burden of proof to the

defendant because the charge included several mandatory presumptions. *Id.* at 1540-41. (citing *Sandstrom v. Montana*, 442 U.S. 510 (1979)). Unlike *Carter*, the jury instruction in the instant case did not include any type of presumption which would shift the burden of proof from the State to Petitioner. Petitioner's final argument, that there was insufficient evidence to sustain a conviction for kidnaping, will be addressed below, in conjunction with claim seven, wherein he alleges that the trial court erred in denying his motion for judgment of acquittal. Pursuant to § 2254(d) the instant claim is denied.

G.    *Claim Seven*

Petitioner asserts that the trial court erred in denying defense counsel's motion for judgment of acquittal as to the premeditated murder and kidnaping charges, in violation of his Sixth and Fourteenth Amendment rights (Doc. No. 1 at 46). Petitioner argues that the State did not prove beyond a reasonable doubt that victim Angel Johnson's death was caused by a criminal act of Petitioner's that was premeditated (Doc. No. 14 at 42). Petitioner also contends that the evidence merely shows that Petitioner's actions were impulsive. *Id.*

Petitioner raised the instant claim as Point IV in his direct appeal. (Ex. B.) The Florida Supreme Court rejected Petitioner's arguments, finding there was competent substantial evidence to support the jury verdicts. *Evans*, 838 So. 2d at 1095. In determining the claim was without merit the court stated:

> Evans raises as his third issue his assertion that the trial court erred in denying his motion for judgment of acquittal. As to the murder charge, Evans argues that the State did not sufficiently establish premeditation. This Court has defined premeditation as a "fully formed conscious purpose to

56

kill" which may be "formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." *Woods v. State*, 733 So. 2d 980, 985 (Fla. 1999). Premeditation can be inferred from the surrounding circumstances, including "the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Holton v. State*, 573 So. 2d 284, 289 (Fla. 1990).

Viewing the evidence in the light most favorable to the State, there is competent, substantial evidence to support a finding of premeditation. Edward Rogers, Evans' former prison-mate, testified that while he and Evans were incarcerated, he overheard part of a telephone conversation in which Evans was arguing with Angel Johnson. When Evans hung up the phone, he told Rogers that if he could get his hands on Johnson, he was going to kill her. Within hours after his release from prison, Evans discussed with several people his belief that Johnson was cheating on his brother and stated that he was going to "take care of his brother's work" for him. There was also evidence that on the evening of the shooting, Evans was looking for Johnson. Once Johnson was in the car, Evans confronted her regarding the allegations that she was cheating on his brother. When she denied the allegations and smiled and laughed, he pulled out the gun, aimed it at her chest, and fired. These facts are sufficient to support premeditated murder. Accordingly, the trial judge was correct in submitting this issue to the jury.

Evans next asserts that he was entitled to judgment of acquittal on the murder charge because the State did not prove that Johnson's death occurred because of a criminal act; instead, he asserts that it was an accident caused when Johnson tried to push the gun away. Although Evans testified to this version of events, Foster and Hogan disputed his testimony, stating that Johnson never touched the gun and had her hands up in the air when the gun was fired. Additionally, the testimony of the medical examiner regarding the physical evidence cast [sic] serious doubts upon Evans' version of events. Accordingly, while the evidence was conflicting, there was sufficient evidence to support the jury finding; therefore, the trial court was correct in denying Evans' motion for judgment of acquittal.

Evans also asserts that there was insufficient evidence to support his conviction for kidnaping. Again, we disagree. Evans was charged and convicted of only one count of kidnaping either Angel Johnson, Erica Foster, or Sammy Hogan. [n 3] Viewing the evidence in a light most favorable to the

State, we hold that there was sufficient evidence for the jury to find that Evans kidnaped any one of the three victims. Although initially all three were voluntarily in the car with Evans, there was sufficient evidence that once the shooting took place, the victims no longer willingly accompanied Evans to the various locations to which he directed he be taken and that he confined them against their will either by force or threat with the intent to terrorize them. Accordingly, the trial court did not err in denying Evans' motion for judgment of acquittal on the kidnaping charge.

> [n 3] The indictment charged in a single count that "WYDELL JODY EVANS, did forcibly, secretly or by threat, confine, abduct or imprison another person, ANGEL JOHNSON, ERICA FOSTER, SAMMY HOGAN." Evans does not allege any error in the charging document.]

*Id.* at 1095-96.

The United States Supreme Court has held that when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Owen v. Sec'y, Dept. of Corr.*, 568 F.3d 894, 918 (11th Cir. 2009). Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n. 16. "Although each element of the offense must be established beyond a reasonable doubt, the State is not required to rule out every hypothesis except that of the guilt of the defendant." *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). If the record contains facts supporting conflicting inferences, the court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 326; *Johnson*, 256 F.3d

at 1172. In other words, the court must defer to the judgment of the jury in determining the credibility of witnesses and in weighing the evidence. *Johnson*, 256 F.3d at 1172.

To prove the crime of first degree premeditated murder, the State had to establish, beyond a reasonable doubt, that (1) Angel Johnson is dead, (2) the death of Angel Johnson was caused by the criminal act of Petitioner, and (3) there was a premeditated killing of Angel Johnson. *See* Fla. Std. Jury Inst. 7.2. Petitioner first argues that evidence was insufficient to prove that the killing was premeditated. Florida courts define premeditation as "more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection...of the act and the probable result of that act." *Norton v. State*, 709 So. 2d 87, 92 (Fla. 1997) (citing *Terry v. State*, 668 So. 2d 954, 954 (Fla. 1996)).

Premeditation may be established by circumstantial evidence. *Woods v. State*, 733 So. 2d 980, 985 (Fla. 1999) (citations omitted). Whether a premeditated design to kill was formed prior to a killing is a question of fact for the jury. *Spencer v. State*, 645 So. 2d 377, 381 (Fla. 1994). Evidence of premeditation includes "'the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'" *Woods*, 733 So. 2d at 985 (quoting *Spencer*, 645 So. 2d at 381)).

Upon review of the record, the Court concludes that the evidence presented was more than sufficient to sustain the conclusion that the murder was premeditated. The evidence at trial established that Edward Rogers, also an inmate at the Brevard County Jail

while Petitioner was incarcerated there, testified that he heard Petitioner arguing on the phone. (Ex. A-11 at T 1387.) When Petitioner's telephone conversation finished he told Rogers "If I can get my hands on that  bitch I'll kill her." *Id.* at T 1391. Petitioner told Rogers that the person to whom he was referring was Angel Johnson. *Id.* at T 1386.

After being released from jail Petitioner discussed with several people, within the following two days leading up to the crime, the fact that Johnson was cheating on his brother, O.J. (Ex. A-10 at T 1109-10; Ex. A-11 at T 1109.)  Sammy Hogan testified that Petitioner had stated that Angel was cheating on his brother and he would take care of his brother's work for him. (Ex A-11 at T 1109.) Lino Odenat also testified that on the evening of the shooting, Petitioner was looking for Johnson. (Ex A-11 at T 1223.) Finally, both Erica Foster and Hogan told the jury that while driving to Cocoa Beach, Evans confronted Johnson regarding whether she was cheating on his brother. (Ex. A-9 at T 995; Ex. A-10 at T 1068.) Johnson stated that she loved O.J. and laughed and then Petitioner pulled out a firearm, pointed it at Johnson, and shot her in the chest. (Ex. A-9 at T 996-99; Ex. A -10 at T 1069-70.) The evidence that Petitioner told Rogers he would kill Johnson, coupled with the fact that he discussed the issue of whether Johnson was cheating on his brother several times earlier in the day and then was looking for Johnson is sufficient to prove premeditation. The trial court did not err in denying Petitioner's motion for judgment of acquittal.

Next Petitioner asserts that the evidence at trial was insufficient to prove that Johnson's death was cause by a criminal act. Petitioner argues that his actions were

impulsive and the shooting was accidental. Contrary to Petitioner's assertions, the Court finds the evidence presented at trial was sufficient to prove he committed a criminal act necessary to convict him of premeditated first degree murder.

Petitioner testified that he found a gun in Hogan's front seat, and did not want the gun near him as he had just been released from jail. (Ex. A-14 at T 1836-37.) Petitioner tried to hand the gun back to Johnson. *Id.* at T 1838. Johnson pushed the gun, the gun fired and hit her. *Id.* Petitioner stated that he did not intentionally shoot Johnson. *Id.* at T 1845. Odenat also told the jury that Petitioner tried to pass a gun from the front seat to Johnson and when Johnson patted the gun it fired. (Ex A-11 at T 1259.) Contrary to Petitioner's story, Foster testified that Petitioner pointed the gun at Johnson after they argued about whether Johnson was cheating on Petitioner's brother. (Ex A-9 at T 995-96.) Foster recalled that Johnson had her hands up and did not touch the gun. *Id.* at T 997-99. Hogan also testified that Angel never touched the firearm. (Ex A-10 at T 1072.)

Although Foster and Hogan's recitation of the events conflicts with Petitioner and Odenat's version of events, if the record contains facts supporting conflicting inferences, the court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution. *Jackson*, 443 U.S. at 326; *Johnson*, 256 F.3d at 1172. In other words, the court must defer to the judgment of the jury in determining the credibility of witnesses and in weighing the evidence. *Johnson*, 256 F.3d at 1172. There was sufficient evidence to support a jury conviction of first degree premeditated murder and a finding that there was a criminal act in this case.

61

Petitioner's final argument is that there was insufficient evidence to convict him of kidnaping.  To convict Petitioner of kidnaping, the state had to prove (1) the defendant forcibly, secretly, or by threat, (2) confined, abducted or imprisoned, (3) the victim against his or her will. *See* Fla. Std. Jury Inst. 9.1.  The indictment charged Petitioner with kidnaping Johnson, Foster, or Hogan. The State charged Petitioner with kidnaping with either intent to inflict bodily harm upon or to terrorize the victims or  intent to commit or facilitate the commission of murder. To prove kidnaping with intent to commit or facilitate the commission of murder, the State had to prove that the confinement, abduction, or imprisonment (1) was not slight, inconsequential, or merely incidental to the felony, (2) was not the kind inherent in the nature of the felony, and (3) had some significance independent of the felony in that it makes the felony substantially easier of commission or substantially lessens the risk of detection. *Id.*

After viewing the evidence in a light most favorable to the State, the Court concludes that there is sufficient evidence to sustain a conviction for kidnaping.  Hogan testified that after Petitioner shot Johnson, he threatened him and Foster, warning them not to tell anyone. (Ex. A-10 at T 1073.) Petitioner had his gun pointed toward Hogan and Foster, and Petitioner instructed Hogan to take him to Eau Gallie. *Id.* Hogan stated he wanted to bring Johnson to the hospital but because Petitioner had a gun pointed at him, he felt he was forced to comply with Petitioner's request. *Id.* at T 1073-74.

Foster also testified that Petitioner told Hogan to drive to Eau Gallie. *Id.* at 1018. When Petitioner left the vehicle to speak with Big Dick, Foster told Hogan to drive away,

but Hogan was too scared. *Id.* Petitioner threatened both Foster and Hogan that he would kill them if they told anyone he had committed the crime. *Id.* at T 1021. Foster specifically told the jury that they did not immediately take Johnson to the hospital because Petitioner would not allow them to drive to the hospital. *Id.* at T 1024. Upon viewing all the testimony, it is apparent that although Foster, Hogan, and Johnson had entered the vehicle willingly, after Petitioner shot Johnson they were no longer freely accompanying Petitioner to Eau Gallie. Instead the evidence tends to show that after the shooting Petitioner threatened Foster and Hogan with his firearm, thus confining them against their will by force or threat.

Furthermore, the evidence was sufficient to prove kidnaping with intent to commit or facilitate the commission of a murder. The confinement was not slight, inconsequential or incidental to the felony. Foster, Johnson, and Hogan were all in the car voluntarily until Petitioner shot Johnson, would not allow them to leave the car and began to threaten them with a firearm. The kidnaping also was not inherent in the nature of a murder. Finally, the kidnaping lessened the risk of detection, because after the shooting, Petitioner forced Hogan to drive to Big Dick's and then to a parking lot where he wiped his fingerprints out of the car and left. Even if the State had not introduced sufficient evidence to support kidnaping with the intent to commit or facilitate the commission of a felony, there is sufficient evidence to support the conviction for kidnaping with intent to inflict bodily harm or to terrorize the victims. The threats to Foster and Hogan with the firearm that he would kill them supports an intent to terrorize the victims. The trial court did not err in

63

denying Petitioner's motion for judgment of acquittal.

The Florida Supreme Court's opinion recites ample evidence of first degree premeditated murder and kidnaping. The Florida Supreme Court's view of the evidence is accorded deference, and Petitioner has not provided evidence to the contrary. Following an independent review of the record, the Court finds there was sufficient evidence to support Petitioner's convictions for both first degree premeditated murder and kidnaping. Petitioner has not demonstrated that the state court's denial of these claims was contrary to, or involved an unreasonable application of, federal law, nor has he established that the decision is an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim is denied pursuant to § 2254(d).

### H.   Claim Eight

Petitioner asserts that the trial court erred by allowing the state to introduce portions of three presentence investigation reports ("PSI reports") during the penalty phase of the trial without allowing Petitioner the opportunity to rebut the information. (Doc. No. 1 at 48). Petitioner raised the instant claim as Point V in his direct appeal. (Ex. B.) The Florida Supreme Court denied relief. *See Evans*, 838 So.2d at 1090.

The record supports the state court's determination. Prior to commencement of the penalty phase, the State informed the trial court and defense counsel of the evidence it was going to present during the penalty phase. (Ex. A-16 at T 2213-43.) Specifically, the State indicated that it intended to present information contained within three PSI reports in order to prove details of the prior violent felonies committed by the defendant. *Id.* at T

2213-27. Evans' counsel objected to the introduction of the PSI reports for two reasons: 1) because the reports were hearsay; and 2) because he had not seen copies of the reports before the discussion concerning the evidence the State planned to present. *Id.* at T 2225; *see also* Doc. No. 1 at 48. The trial court overruled the objections, but allowed Petitioner to strike information contained within the reports that was unrelated to the circumstances of the offenses. (Ex. A-16 at T 2232-43.) Petitioner asserts, without explanation, that Petitioner was not given any opportunity to rebut the information contained within the PSI reports. However, the Florida Supreme Court determined that Petitioner did have opportunity to rebut the information contained in the reports:

> Here, Evans argues that he was not afforded a fair opportunity to rebut the hearsay statements contained in the presentence investigation reports and that their admission denied his Sixth Amendment confrontation right because he was unable to cross-examine the person who prepared them. We disagree. The transcripts of the prior trials were available to rebut any inaccuracies in the reports. The reports themselves contained Evans' statements regarding the crimes and also included victim impact information which was favorable to the defense. The trial court agreed to allow Evans to place that information before the jury, but he elected not to do so. Further, while as described above there were other ways Evans could have rebutted the statements contained in the reports, Evans voluntarily took the stand during the penalty phase and gave his version of the facts underlying the previous violent felony convictions.

*Evans v. State*, 838 So.2d at 1097.

Nothing in the record suggests that the Florida Supreme Court's factual determination that Petitioner had the opportunity to rebut the information in the PSI reports was unreasonable. Petitioner testified at the penalty phase regarding the circumstances surrounding his prior violent felonies and was allowed to explain the circumstances

surrounding each prior arrest. (Ex. A-16 at 2357-62.) Petitioner has not demonstrated by clear and convincing evidence that the state court's findings are incorrect. *See Parker*, 244 F.3d at 835-36 (noting a determination of a factual issue by a state court is presumed correct unless a habeas petitioner rebuts that presumption by clear and convincing evidence); 28 U.S.C. § 2254(e)(1).

The state court's denial of this claim was not contrary to clearly established federal law as determined by the Supreme Court of the United States. The admission of hearsay evidence in the penalty phase of a criminal trial does not lead to the automatic conclusion that a defendant's constitutional rights have been violated. *See California v. Green*, 399 U.S. 149, 156 (1977). It is only when a defendant is deprived of the right to rebut the hearsay evidence that due process is implicated. *Gardner v. Florida*, 430 U.S. 349, 362 (1977). There is no constitutional violation under *Gardner* unless the judge is both aware of, and actually considers in sentencing, information that is not disclosed to the defendant. *Hendrix v. Sec'y, Dept. of Corr.*, 527 F.3d 1149 (11th Cir. 2008); *Gardner*, 430 U.S. at 358.

Petitioner claims that he received insufficient notice of the state's intention to introduce the objectionable portions of the PSI reports. Petitioner became aware that the State intended to use the circumstances portions of the PSI reports prior to commencement of the penalty phase and was given an opportunity to review the reports before the jury was brought in. (Ex. A-16 at T 2217, 2221.) At that point, defense counsel objected to the evidence on the grounds that it constituted a discovery violation since he had not received prior copies of the reports. *Id.* at T 2225. Defense counsel sought exclusion of the reports,

66

but did not seek a continuance in order to prepare a rebuttal to the reports. There is no clearly established federal law pursuant to 28 U.S.C.A. § 2254(d)(1), granting a constitutional right to notice of the evidence a state plans to use and there is no rule that inadequate notice requires a continuance (whether or not one is sought) or exclusion of evidence. *See Gray v. Netherland*, 518 U.S. 152, 167-69 (1996); *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case.").

Petitioner has presented no evidence to refute, and is unable to overcome, the presumption of correctness of the Florida Supreme Court's factual finding that he was afforded a fair opportunity to rebut the hearsay statements contained in the PSI reports. The admission of the hearsay statements contained in the PSI reports was not contrary to nor an unreasonable application of federal law. Accordingly, this claim is denied pursuant to § 2254(d).

I.    *Claim Nine*

Petitioner claims that his death sentence is disproportionate in comparison with other Florida cases and that such application of the death penalty violates the Eighth and Fourteenth Amendments to the U.S. Constitution (Doc. No. 1 at 50).

Petitioner challenged the proportionality of his sentence on direct appeal and the Florida Supreme Court found Petitioner's death sentence proportionate when compared to similar cases in which the court found death the appropriate penalty. *Evans*, 838 So. 2d at 1098-99. Petitioner argues that the state court failed to reasonably compare his case to other cases in which death was found to be non-proportional.

67

The United States Supreme Court has held that proportionality review is not required by the U.S. Constitution. *See Pulley v. Harris*, 465 U.S. 37, 43-44 (1984). In addition, where state law requires proportionality review, the Eleventh Circuit has held that

> A federal habeas court should not undertake a review of the state supreme court's proportionality review and, in effect, "get out the record" to see if the state court's finding of fact, their conclusion based on a review of similar cases, was supported by the "evidence" in the similar cases. To do so would thrust the federal judiciary into the substantive policy making area of the state.

*Moore v. Balkcom*, 716 F.2d 1511, 1518 (11th Cir. 1983) (citing *California v. Ramos*, 103 S. Ct. 3446, 3451-53 (1983)); *see also Mills v. Singletary*, 161 F.3d 1273, 1281-82 (11th Cir. 1998). Moreover, the Eleventh Circuit has rejected the argument that federal law requires those state courts which are required to undertake such review, to "make an explicit detailed account of their comparisons." *Lindsey v. Smith*, 820 F.2d 1137, 1154 (11th Cir. 1987). In doing so, the Eleventh Circuit explicitly stated:

> [W]e refuse to mandate as a matter of federal constitutional law that where, as here, state law requires such review, courts must make an explicit, detailed account of their comparisons. Based on their own past experience in reviewing capital punishment cases, state appellate courts "can rationally distinguish between those individuals for whom the death penalty is an appropriate sanction and those for whom it is not," *Spaziano v. Florida*, 468 U.S. 447 (1984), without listing in their opinions the facts that did not justify the imposition of the death penalty in prior cases.

*Id.*

To the extent Petitioner challenges the Florida Supreme Court's proportionality review and requests the Court to conduct a *de novo* proportionality review of his sentence,

he is not entitled to such relief. The Florida Supreme Court conducted a proportionality review as required by Florida law and determined that no re-sentencing was warranted. There is no evidence that this was done arbitrarily or capriciously. The review provided an adequate safeguard of Petitioner's constitutional rights. This claim is denied.

J.    *Claim Ten*

Petitioner alleges that the Florida death sentencing statute is unconstitutional as applied under the Sixth, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to *Ring v. Arizona*, 536 U.S. 584 (2002), because Petitioner was not charged in the indictment with the aggravating circumstances for which the death penalty was a possible punishment (Doc. No. 1 at 52). Petitioner contends that because aggravating circumstances are essential elements of a crime for which the death penalty may be imposed, they must be notice, submitted to the jury, and proved beyond a reasonable doubt. *Id.* Moreover, Petitioner asserts that Florida capital defendants are not eligible for a death sentence simply upon conviction for first-degree murder, and therefore, the finding of an aggravator exposes a defendant to a greater punishment than that authorized by the jury's guilty verdict alone. *Id.*

Petitioner raised this claim in his state habeas corpus petition filed with the Florida Supreme Court. (Ex. L.)  The Florida Supreme Court found Petitioner's claim was procedurally barred because he did not preserve the claim by challenging the constitutionality of Florida's sentencing scheme at both trial and on direct appeal. *Evans v. State*, 946 So. 2d 1, 15-16 (Fla. 2006).

As noted previously, "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law. In addition, the federal courts may not address claims that have not been presented in the state court if the state court would have found the claims to be procedurally defaulted." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). In short, a review of the record establishes that the instant claim was not raised on direct appeal and later was found to be procedurally barred by the state court. Because the claim was not fairly presented on direct appeal, the state court never had an opportunity to consider it; thus, this claim is procedurally defaulted.

The Court must disregard claim ten unless Petitioner establishes that either of the two exceptions to the procedural default bar exist in this case. *See Henderson*, 353 F.3d at 892. Petitioner has not done so. Here, Petitioner has neither alleged nor shown that cause and prejudice exists to excuse the default, nor has he argued a claim of "actual innocence" that might support the fundamental miscarriage of justice exception. The record reveals that Petitioner is unable to satisfy either of the exceptions to the procedural default bar. Therefore, Petitioner's tenth claim is procedurally barred.

Alternatively, the Court notes that Petitioner's claim is precluded by Section 2254(d). In *Ring*, the United States Supreme Court expanded its ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to the context of capital punishment. 536 U.S. at 584. The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Subsequently in *Ring* the Court held that

70

aggravating factors that justify an increase in the maximum punishment for first degree murder from life imprisonment to death become elements of a greater offense and must be found to exist beyond a reasonable doubt by a jury. 536 U.S. at 609.

While *Apprendi* and *Ring* do not apply retroactively to cases that were already final on direct appeal, *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004), Petitioner's direct appeal was pending in the Florida Supreme Court when *Ring* was decided. However, it has been repeatedly determined that the "Florida capital sentencing procedures do not create the Sixth Amendment error identified in *Ring*." *Grossman v. Crosby*, 359 F. Supp. 2d 1233, 1284 (M.D. Fla. 2005). While *Ring* makes *Apprendi* applicable to death penalty cases, the Florida Supreme Court has expressly recognized that the maximum penalty for first degree murder under Florida's statutory scheme is death. *See Porter v. Crosby*, 840 So. 2d 981, 986 (Fla. 2003); *Shere v. Moore*, 830 So. 2d 56, 62 (Fla. 2002) ("This court has defined a capital felony to be one where the maximum possible punishment is death."); *Mills v. Moore*, 786 So. 2d 532, 536-38 (Fla. 2001). Thus, "unlike Arizona, a Florida defendant is eligible for the death penalty upon conviction for first degree murder." *Grossman v. Crosby*, 359 F. Supp. 2d at 1284.

As such, the Florida Supreme Court has rejected numerous *Ring* challenges, consistently finding that Florida's sentencing scheme comports with the Sixth Amendment. *See Kormondy v. State*, 845 So. 2d 41, 54 (Fla. 2003) (*Ring* does not encompass Florida procedures or require either notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury); *Bottoson v. Moore*, 833 So. 2d 693 (Fla. 2002); *King v. Moore*, 831 So. 2d 143 (Fla. 2002). Because

71

*Ring* holds that any fact which increases the penalty beyond the statutory maximum must be found by the jury, and because death is the statutory maximum for first degree murder in Florida, *Ring* does not establish Sixth Amendment error under Florida's statutory scheme.

Petitioner has not demonstrated that the state court's finding that its capital sentencing scheme comports with constitutional requirements is either contrary to, or an unreasonable application of, clearly established federal law. Therefore, this claim is denied pursuant to Section 2254(d).

K.    *Claim Eleven*

Petitioner alleges that section 921.141 of the Florida Statutes is facially vague and overbroad, in violation of the Eighth and Fourteenth Amendments  (Doc. No. 1 at 53.) Specifically, Petitioner asserts that the jury was improperly instructed that its role was merely "advisory." Petitioner contends that the jury sense of responsibility is diminished by the misleading comments and instructions, and this diminution violates the Eighth Amendment and *Caldwell v. Mississippi*, 472 U.S. 320 (1985).

A review of the record reveals that Petitioner's counsel did not posit a *Caldwell* objection during the penalty phase. Petitioner raised this claim for the first time in his habeas corpus petition to the Florida Supreme Court. (Ex. L.) The Florida Supreme Court found the claim was procedurally barred. *Evans*, 946 So. 2d at 15 n. 1.  Therefore, the Court will not address the claim as it has been procedurally defaulted under state law. *Tower*, 7 F.3d at 210. Furthermore, Petitioner has not argued the application of one of the exceptions to the procedural bar rule.  Accordingly, this Court has no basis for recognizing  cause and

prejudice to excuse the default or a claim of actual innocence that may support the fundamental miscarriage of justice exception. *Henderson*, 353 F.3d at 892. Petitioner's eleventh claim is procedurally barred.

Additionally, the Court finds that Petitioner is not entitled to relief upon reviewing the merits of this claim. In *Caldwell*, the Court found "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29. To show that a trial court violated *Caldwell*, a defendant must show that the remarks to the jury "'improperly described the role assigned to the jury by local law.'" *Carr v. Schofield*, 364 F.3d 1246, 1258 (11th Cir. 2004) (quoting *Dugger v. Adams*, 489 U.S. 401, 407 (1989)). No *Caldwell* violation exists when a jury was not "affirmatively misled regarding its role in the sentencing process." *Id.* (citing *Romano v. Oklahoma*, 512 U.S. 1, 9 (1994)). A reference to or description of the jury's verdict as an advisory one or as a recommendation does not constitute a *Caldwell* violation as it "accurately characterize[s] the jury's and judge's sentencing roles under [state] law." *Davis v. Singletary*, 119 F.3d 1471, 1482 (11th Cir. 1997).

During the penalty phase the trial court instructed the jury as follows regarding their role in determining Petitioner's sentence:

> The punishment for this crime is either death or life imprisonment without the possibility of parole.

> The final decision as to what punishment shall be imposed rests solely with the Judge of this Court.

However, the law requires that you, the Jury, render to the Court an advisory sentence as to what punishment should be imposed upon the Defendant.

Your advisory sentence as to what sentence should be imposed on this Defendant is entitled by law and will be given great weight by this Court in determining what sentence to impose in this case.

(Ex A-16 at T 2258-59.)

The jury instructions provided during the penalty phase of the trial accurately explained the jury's role under Florida law. *See* Fla. Std. Jury Inst. 7.11; *Archer v. State*, 673 So. 2d 17, 21 (Fla. 1996) (holding the Florida Standard Jury Instructions fully advise the jury of the importance of its role). The state court did not indicate or imply that the jury recommendation was superfluous or that the importance of the jury's decision was lessened merely because it was a recommendation. The Florida Supreme Court's rejection of this claim is not contrary to, or an objectively unreasonable application of, federal law. Petitioner has not shown that the jury instructions give rise to a *Caldwell* violation. Claim eleven is denied pursuant to Section 2254(d).

### L.    *Claim Twelve*

Petitioner maintains that his Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of his execution. He raised this claim in his state habeas corpus petition, but the Florida Supreme Court rejected the claim, noting that Petitioner had conceded this claim was not ripe. *Evans*, 946 So. 2d at 15 n. 25. In *Ford v. Wainwright*, 477 U.S. 399, 409-10 (1986), the United States Supreme Court held that "the Eighth Amendment prohibits a State from carrying out a sentence of death

74

upon a prisoner who is insane."

However, pursuant to Florida Rule of Criminal Procedure 3.811(c), a motion to determine incompetence to be executed cannot be filed until the Governor signs a death warrant. *Evans v. State*, 975 So. 2d 1035, 1053 (Fla. 2007). Petitioner acknowledged in the state habeas proceedings that his claim was premature as a death warrant has not been signed, nor has he been found incompetent. A *Ford* claim does not become ripe until a prisoner's execution is imminent. *See Panetti v. Quarterman*, 551 U.S. 930, 946-47 (2007). Thus, the Court will dismiss claim twelve without prejudice to Petitioner's right to raise it again when the issue becomes ripe for adjudication.

### M.    Claim Fourteen[10]

In ground fourteen, Petitioner takes issue with portions of the penalty phase jury instructions and alleges that appellate counsel rendered ineffective assistance by failing to litigate this issue on direct appeal. Specifically, Petitioner asserts that the trial judge twice repeated an incorrect statement of law immediately before the jury retired for deliberations:

> As you have been told, the final decision as to what punishment shall be imposed is the responsibility of the Judge. However, it is your duty to follow the law that will now be given you by the Court and render to the Court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.

. . . .

---

[10] Petitioner's thirteenth claim will be addressed at the end, as it is a claim of cumulative error.

> Should you find sufficient aggravating circumstances do exist,
> it will then be your duty to determine whether mitigating
> circumstances exist that outweigh the aggravating
> circumstances.

(Doc. 1 at 61) (Ex. A-16 at 2384-86). Petitioner argues that, as given, these instructions violated Florida law and the Eighth and Fourteenth Amendments by shifting the burden of proof to Petitioner on the central sentencing issue of whether death was the appropriate sentence (Doc. No. 14 at 58). Petitioner also asserts that by being instructed that mitigating circumstances must outweigh aggravating circumstances before the jury could recommend life, the jury was effectively told that once aggravating circumstances were established, it need not consider mitigating circumstances unless those mitigating circumstances were sufficient to outweigh the aggravating circumstances. *Id.*

Petitioner did not raise this issue on direct appeal. It was raised for the first time in a state petition for a writ for habeas corpus and the state court concluded that the claim was procedurally barred since it was not preserved for direct appeal. *Evans v. State*, 946 So.2d at 15 n.25. Furthermore, Petitioner has not argued the application of one of the exceptions to the procedural bar rule. This Court has no basis for recognizing cause and prejudice to excuse the default or a claim of actual innocence that may support the fundamental miscarriage of justice exception. *Henderson*, 353 F.3d at 892. Consequently, claim fourteen cannot be considered by this court. *Tower*, 7 F.3d at 210.

Petitioner's claim that appellate counsel was ineffective for failing to raise this issue

on direct appeal is however, properly before this Court. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*. *See Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). This Court must examine the merits of the argument Petitioner alleges his counsel failed to raise to determine if appellate counsel acted reasonably. *Miller v. Dugger*, 858 F.2d 1536, 1538 (11th Cir. 1988). To render constitutionally effective assistance, appellate counsel need not raise issues that he or she reasonably concludes will not be considered on the merits by the appellate court. *Francois v. Wainwright*, 741 F.2d 1275, 1285 (11th Cir. 1984). Appellate counsel must be allowed to exercise their reasonable professional judgment in selecting those issues most promising for review, and "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . ." *Jones v. Barnes*, 463 U.S. 745, 753 (1983).

In the instant case, Petitioner's claim is without merit. When viewed in context of the instructions as a whole, the challenged instructions do not violate Florida law or Petitioner's constitutional rights as asserted by Petitioner. The instructions given by the trial court were virtually identical to Florida's standard jury instructions for penalty proceedings in capital cases. *See* Fla. Std. Jury Inst. Crim. § 7.11. The Florida Supreme Court has repeatedly held that Florida's standard penalty-phase instructions do not unconstitutionally shift the burden of proof to the defendant. *See Smithers v. State*, 18 So.3d 460, 472 (Fla. 2009) (holding that Florida's standard penalty-phase instructions do not unconstitutionally shift the burden of proof to the defendant); *Shellito v. State*, 701 So.2d 837, 842-43 (Fla. 1997) (finding that the standard instructions do not improperly shift the burden of proof). Furthermore, Petitioner

77

has not indicated how the given instructions violate the Florida statutes, which require a jury to determine "whether sufficient mitigating circumstances exist which outweigh the aggravating circumstances found to exist." Fla. Stat. § 921.141(2)(b).

A review of the record shows that the jury instructions, as given by the trial court and when viewed in context of the instructions as a whole, did not improperly shift the burden of proof to Petitioner to prove "whether he should live or die." The jury was instructed, both before and after evidence was taken in the penalty phase, that it must first find the existence of aggravating circumstances before the death penalty could be considered.[11] Because the

---

[11]After evidence was taken in the penalty phase, the trial court stated in pertinent part:

> [I]t is your duty to follow the law that will now be given you by the court and render to the court an advisory sentence based upon your determination as to whether sufficient aggravating circumstances exist to justify the imposition of the death penalty and whether sufficient mitigating circumstances exist to outweigh any aggravating circumstances found to exist.
>
> . . .
>
> If you find the aggravating circumstances do not justify the death penalty your advisory sentence should be one of life imprisonment without the possibility of parole. Should you find sufficient aggravating circumstances do exist it will then by your duty to determine whether mitigating circumstances exist that outweigh the aggravating circumstances.
>
> . . .
>
> Each aggravating circumstance must be established beyond a reasonable doubt before it may be considered by you in arriving at your decision. If one or more aggravating circumstances are established you should consider all the

instructions required the state to prove the existence of aggravating circumstances beyond a reasonable doubt, the burden of proof was not improperly shifted by the instructions given. *See Walton v. Arizona*, 497 U.S. 639 (1990) (so long as the state's method of allocating burdens of proof does not lessen the state's burden to prove the existence of aggravating circumstances, a defendant's constitutional rights are not violated by having to prove mitigating circumstances sufficiently substantial to call for leniency), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *see also Kansas v. Marsh*, 548 U.S. 163, 174 (2006) ("[A] State enjoys a range of discretion in imposing the death penalty, including the manner in which aggravating and mitigating circumstances are to be weighed.").

Petitioner's contention that the jury was effectively told that once aggravating circumstances were established, it need not consider mitigating circumstances unless those mitigating circumstances were sufficient to outweigh the aggravating circumstances is also without merit. The trial court instructed the jury that it was to consider all mitigating evidence if an aggravating circumstance was established:

> If one or more aggravating circumstances are established, you should consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

_____

> evidence tending to establish one or more mitigating circumstances and give that evidence such weight as you feel it should receive in reaching your conclusion as to the sentence that should be imposed.

(Ex. A-16 at 2385-87.)

(Ex. A-16 at 2387.) Because the jury was instructed to consider all mitigating evidence in reaching its penalty recommendation, there was no constitutional violation in the given instructions. *Blystone v. Pennsylvania*, 494 U.S. 299, 307 (1990) (The constitutional requirement for individualized sentencing in capital cases is satisfied by allowing the jury to consider all relevant mitigating evidence).

Each of Petitioner's substantive arguments regarding the jury instructions is without merit and appellate counsel acted reasonably in not raising those arguments on direct appeal. *See Owen v. Sec'y for Dept. of Corr.*, 568 F.3d. 894, 915 (11th Cir. 2009) (finding any deficiencies of counsel in failing to raise or adequately pursue an issue that lacks merit cannot constitute ineffective assistance of counsel). Petitioner has not shown that counsel's representation fell below an "objective standard of reasonableness" as required by Strickland. Accordingly, claim fourteen is denied pursuant to § 2254(d).

### N. *Claim Fifteen*

Petitioner asserts that execution by lethal injection constitutes cruel and unusual punishment and deprives him of due process and equal protection, pursuant to the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution (Doc. No. 1 at 63-64). Petitioner raised this claim for the first time in his habeas corpus petition filed with the Florida Supreme Court. (Ex. L.) The Florida Supreme Court found the claim was procedurally barred. *Evans*, 946 So. 2d at 15 n. 1. Therefore, the Court will not address the claim as it has been procedurally defaulted under state law. *Tower*, 7 F.3d at 210. Furthermore, Petitioner has not argued the application of one of the exceptions to the

80

procedural bar rule. Accordingly, this Court has no basis for recognizing cause and prejudice to excuse the default or a claim of actual innocence that may support the fundamental miscarriage of justice exception. *Henderson*, 353 F.3d at 892. Claim fifteen is procedurally barred.

Alternatively, Petitioner has not demonstrated that he is entitled to relief when reviewing the merits of this claim. The Florida Supreme Court has consistently rejected claims challenging lethal injection as a method of execution. *See Lightbourne v. McCollum*, 969 So. 2d 326, 349-53 (Fla. 2007). Furthermore, in *Baze v. Rees*, 553 U.S. 35 (2008), the United States Supreme Court upheld a similar lethal injection scheme as not constituting cruel and unusual punishment. It was noted that revisions to Florida's lethal injection protocols provide additional safeguards to protect against unnecessary pain during execution. *See id.* at 120-21 (Ginsberg, J., dissenting) (noting Florida has adopted safeguards for protection by taking measures to assess an inmate's consciousness). As Florida's lethal injection protocol has been upheld, this claim is denied.

### O. Claim Thirteen

Petitioner maintains that his trial was fraught with procedural and substantive errors which cannot be found harmless when viewed as a whole, since the combination of errors deprived him of the fundamentally fair trial guaranteed under the Sixth, Eighth, and Fourteenth Amendments (Doc. No. 1 at 58).

The Eleventh Circuit Court of Appeals has recognized that in reviewing a habeas petition,"[a] piecemeal review of each incident does not end our inquiry. We must consider

the cumulative effect of these incidents and determine whether, viewing the trial as a whole, appellants received a fair trial as is their due under our Constitution." *United States v. Blasco*, 702 F.2d 1315, 1329 (11th Cir.1983) (citing *United States v. Labarbera*, 581 F.2d 107 (5th Cir. 1978)). After reviewing the guilt and penalty phase proceedings and considering the claims collectively, this Court cannot say that Petitioner's "trial, as a whole, was fundamentally unfair and outside of the bounds of the Constitution." *Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) (rejecting petitioner's "cumulative effects" claim, and affirming the denial of federal habeas relief). Therefore, this claim must be denied.

## V.    Conclusion

The Court finds that none of the claims raised in the instant petition have merit or require a hearing in this Court. Any of Petitioner's allegations not specifically addressed herein are determined to be without merit. The Court determines that the petition must be denied and that this case must be dismissed with prejudice.

## VI.   Certificate of Appealability

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim,

a certificate of appealability should issue only when a Petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934.   However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

In light of *Sears v. Upton*, 130 S.Ct 3259 (2010) and *Porter v. McCollum*, 130 S.Ct. 447 (2009), the Court finds that jurists of reason could find it debatable that the denial of claim two was correct. Thus, the Court will grant a certificate of appealability regarding the issue of whether trial counsel rendered ineffective assistance of counsel by failing to investigate Petitioner's mental health background and by failing to retain expert witnesses for the penalty phase of trial. The Court concludes, however, that Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of his other constitutional claims debatable or wrong, and thus the Court will deny Petitioner a certificate of appealability as to all other claims.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Wydell Evans (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

1.      Petitioner is **GRANTED** a certificate of appealability with respect to claim two. Petitioner is **DENIED** a certificate of appealability with respect to all other claims.

3.      The Clerk of the Court shall enter judgment accordingly and is directed to close

this case.

**DONE AND ORDERED** in Orlando, Florida, this 29 day of September, 2010.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies to:
pslc 9/29
Counsel of Record

84